STATE OF NORTH CAROLINA v. MICHAEL LEE FULLWOOD

No. 37A86-3

(Filed 31 July 1996)

**1. Indigent Persons § 26 (NCI4th)— capital sentencing—jury selection—questions by only one attorney—statutory rights not violated**

The trial court did not abuse its discretion or violate defendant's statutory right to two attorneys in a capital trial by allowing

only one of defendant's two attorneys to question prospective jurors in a capital sentencing proceeding where the record fails to show the acceptance of any juror to whom defendant had legal objections upon any ground; defendant failed to exhaust his peremptory challenges; and the trial court did not prohibit defendant's attorneys from communicating with, prompting, or consulting one another. N.C.G.S. § 7A-450(b1).

**Am Jur 2d, Jury §§ 200, 234, 235.**

**2. Appeal and Error § 150 (NCI4th)— constitutional issue— failure to preserve for appeal**

Defendant failed to preserve for appellate review the constitutional issue of whether defendant's right to the assistance of counsel was violated by the trial court's ruling that only one of defendant's two attorneys could question prospective jurors in a capital sentencing proceeding where defendant did not raise this issue at trial.

**Am Jur 2d, Criminal Law §§ 732 et seq.; Jury §§ 200, 234, 235.**

**When is attorney's representation of criminal defendant so deficient as to constitute denial of federal constitutional right to effective assistance of counsel—Supreme Court Cases. 83 L. Ed. 2d 1112.**

**3. Jury § 64 (NCI4th)— capital sentencing—jury selection— comments by court—no abuse of discretion**

The trial judge did not improperly discourage prospective jurors in a capital sentencing proceeding from disclosing prejudicial information and did not abuse his discretion by comments during jury selection that he did not want prospective jurors asking questions and that prospective jurors should "be cautious in what you may say, and do not say, and do not say anything that would tend to taint any other juror" where defense counsel actively questioned the jurors and they responded to his questions; defendant does not contend that he was dissatisfied with the jury as seated; and defendant did not exhaust his peremptory challenges.

**Am Jur 2d, Jury §§ 191, 194, 196, 234, 235.**

STATE v. FULLWOOD

[343 N.C. 725 (1996)]

**4. Jury § 190 (NCI4th)— death penalty views—exclusion of question—failure to exhaust peremptory challenges**

The trial court's refusal to permit defense counsel to ask a prospective juror a general question concerning his feelings about the death penalty was not preserved for appellate review where defendant failed to exhaust his peremptory challenges.

**Am Jur 2d, Jury §§ 208, 210, 234, 235.**

**Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

**5. Evidence and Witnesses § 2089 (NCI4th)— lay opinion— emotional state of defendant—personal knowledge**

Defendant failed to show prejudicial error in the trial court's exclusion of lay opinion testimony by defendant's mother in a capital sentencing proceeding that defendant was depressed following the shooting death of his brother in New York where, at the time defendant's mother was asked the question about defendant's reaction to his brother's death, no evidence had been presented that she had personal knowledge of defendant's mental state; and although testimony was presented during a subsequent *voir dire* to establish that defendant's mother had a personal knowledge sufficient to answer the question, defendant did not pursue the matter again before the jury.

**Am Jur 2d, Evidence §§ 282, 556.**

**Comment Note.—Ability to see, hear, smell, or otherwise sense, as proper subject of opinion by lay witness. 10 ALR3d 258.**

**Construction and application of Rule 701 of Federal Rules of Evidence, providing for opinion testimony by lay witnesses under certain circumstances. 44 ALR Fed. 919.**

**6. Evidence and Witnesses § 2803 (NCI4th)— capital sentencing—exclusion of leading question**

In a capital sentencing proceeding in which defendant testified that, a few days before the murder, he told the victim he had been using cocaine and had thoughts of harming her, and the victim told him he "needed to get some help," the trial court did not abuse its discretion in sustaining the State's objection to a ques-

tion as to whether defendant wished now that he had gotten help because the question was leading.

**Am Jur 2d, Trial §§ 403, 427.**

**Cross-examination by leading questions of witness friendly to or biased in favor of cross-examiner. 38 ALR2d 952.**

7. **Criminal Law § 1314 (NCI4th)— capital resentencing proceeding—private conversation with officer—previous knowledge by district attorney—exclusion of testimony—irrelevancy to show remorse mitigating circumstance**

Where the State disclosed in a suppression hearing in a capital resentencing hearing that it had a previously undisclosed portion of the police interview with defendant, and an officer testified that, after recording defendant's statement, he had a private conversation with defendant in which defendant began to cry and stated that he was on cocaine the night before the killing and that he lost control and killed the victim, any error by the trial court in excluding testimony by the officer that he had told the district attorney nine years earlier about this private conversation was harmless beyond a reasonable doubt where the jury heard similar accounts of the conversation from both defendant and the officer, and testimony that the officer had previously relayed this information to the district attorney would not have caused any juror to find the mitigating circumstance that defendant displayed remorse or sorrow for what he had done.

**Am Jur 2d, Criminal Law §§ 998, 1010, 1020; Evidence § 1158.**

8. **Criminal Law § 446 (NCI4th)— capital sentencing—prosecutors' arguments—one of worst murders prosecuted in courthouse**

The trial court did not err by allowing the prosecutors to argue to the jury in a capital sentencing proceeding in support of the especially heinous, atrocious, or cruel aggravating circumstance that this was one of the worst murders anyone had ever heard of and one of the worst ever prosecuted in the sixty-year history of the Buncombe County courthouse.

**Am Jur 2d, Trial §§ 841, 1076.**

Prosecutor's appeal in criminal case to racial, national, or religious prejudice as ground for mistrial, new trial, reversal, or vacation of sentence—modern cases. 70 ALR4th 664.

9. **Criminal Law § 1322 (NCI4th)— capital sentencing—life without parole—amended statute inapplicable**

The trial court did not deny defendant due process of law by refusing to instruct the jury in a capital sentencing proceeding that it could consider life without parole as the sentencing alternative to death pursuant to the amendment to N.C.G.S. § 15A-2002 since that amendment specifically provides that it applies only to offenses occurring on or after 1 October 1994; defendant's offense occurred in 1985; and defendant was sentenced after rehearing on 18 August 1994, also prior to the effective date of the amended statute. Even though defendant purportedly waived his *ex post facto* objections to retroactive application of the amended statute, defendant had no right to be sentenced under that statute.

**Am Jur 2d, Trial §§ 1077, 1078, 1132.**

10. **Criminal Law § 496 (NCI4th)— jury request to review testimony—denial by court—exercise of discretion**

The trial court did not fail to exercise its discretion in denying the jury's request to review a portion of defendant's mother's testimony in a capital sentencing proceeding where the trial judge stated for the record that the testimony of defendant's mother would not be sent into the jury room because the previous court reporter who had recorded the testimony had left; the trial judge added that the decision was in his discretion; when the jury returned to the courtroom, the judge explained the situation with the two reporters but added that the decision was in his discretion and reminded the jury to use its recollection of the evidence; and it is clear that the trial court did not rely solely on the fact that the transcript was not readily available.

**Am Jur 2d, Evidence § 1243.**

11. **Criminal Law § 1373 (NCI4th)— death penalty not disproportionate**

A sentence of death imposed upon defendant for first-degree murder was not disproportionate to the penalty imposed in similar cases where the jury found defendant guilty under the theory

STATE v. FULLWOOD

[343 N.C. 725 (1996)]

of malice, premeditation, and deliberation; it also convicted defendant of felonious breaking or entering; the jury found the aggravating circumstance that the murder was especially heinous, atrocious, or cruel; defendant was twenty-nine years old and was the sole perpetrator of the murder; defendant followed the infliction of the fatal stab wounds upon the victim with a self-inflicted stab wound in an attempt to convince law enforcement authorities that the victim had attacked him; defendant expressed no concern for the victim and obtained no assistance for her; and the jury rejected the submitted mitigating circumstance that defendant had expressed remorse for the killing.

**Am Jur 2d, Trial §§ 841, 1076.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

**Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed. 51 L. Ed. 2d 886.**

Justice ORR did not participate in the consideration or decision of this case.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Sitton, J., at the 1 August 1994 Criminal Session of Superior Court, Buncombe County. Heard in the Supreme Court 14 May 1996.

*Michael F. Easley, Attorney General, by David Roy Blackwell, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant-appellant.*

FRYE, Justice.

Defendant, Michael Lee Fullwood, was convicted in 1985 of felonious breaking and entering and of the first-degree murder of Deidre Waters. He was sentenced to ten years' imprisonment for the breaking and entering conviction and to death for the first-degree murder conviction. On defendant's direct appeal, this Court found no error in the convictions and affirmed the sentences entered by the trial court.

*State v. Fullwood*, 323 N.C. 371, 373 S.E.2d 518 (1988). Subsequently, the Supreme Court of the United States vacated defendant's sentence of death for the murder of Deidre Waters and remanded the case to this Court for further consideration in light of *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). *State v. Fullwood*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990). On remand, this Court determined that *McKoy* error had occurred and that the error was not harmless beyond a reasonable doubt and remanded the case for a new capital sentencing proceeding. *State v. Fullwood*, 329 N.C. 233, 404 S.E.2d 842 (1991). At the new capital sentencing proceeding, the jurors returned a recommendation of death. Judge Claude S. Sitton, in accordance with the jury's recommendation, imposed a sentence of death.

A detailed summary of the evidence introduced during defendant's original trial is set forth in our prior opinion on defendant's direct appeal, in which the majority of this Court found no error in defendant's trial. *Fullwood*, 323 N.C. 371, 373 S.E.2d 518. Except where necessary to develop and to determine the issues presented to this Court arising from defendant's resentencing proceeding, we will not repeat the evidence supporting defendant's convictions.

Defendant appeals to this Court as of right from the sentence of death. Defendant has brought forward twenty-six. assignments of error. After a careful and thorough review of the transcript, record, briefs, and oral arguments of counsel, we reject each of these assignments of error and conclude that defendant's capital sentencing proceeding was free of prejudicial error and that the death sentence is not disproportionate. Accordingly, we uphold defendant's sentence of death.

[1] By an assignment of error, defendant contends that the trial court committed reversible error by dictating that only one of defendant's two attorneys could question jurors during most of the jury selection process. Defendant argues that, during the jury *voir dire*, the trial court arbitrarily prohibited one of his attorneys from questioning prospective jurors and that this ruling impermissibly infringed on his statutory right to the assistance of two attorneys in a capital trial and his constitutional right to the assistance of counsel. We disagree.

On the second day of jury selection, the trial court stated that only one of defendant's two attorneys would be permitted to question prospective jurors during the remainder of the jury selection process.

Defense counsel thrice requested the judge to reconsider, and the requests were denied. Defendant argues that N.C.G.S. § 7A-450(b1) entitles a capital defendant to two attorneys for his trial and sentencing proceeding and that the violation of this statute is *per se* prejudicial. *See State v. Hucks*, 323 N.C. 574, 579-81, 374 S.E.2d 240, 244-45 (1988) ("The statute requires the trial court to appoint assistant counsel as a matter of course when an indigent is to be prosecuted in a capital case.").

Defendant, relying on *State v. Mitchell*, 321 N.C. 650, 365 S.E.2d 554 (1988), and *State v. Eury*, 317 N.C. 511, 346 S.E.2d 447 (1986), argues that a capital defendant has a constitutional right to have both his attorneys question potential jurors during the jury selection process. Defendant further argues that the court's decision to allow only one of his attorneys to question prospective jurors effectively relegated his second attorney to the position of a paralegal. We disagree.

In both *Eury* and *Mitchell*, we held that it was error for the trial court not to allow both attorneys to make closing arguments to the jury because N.C.G.S. § 84-14 specifically provides that "[i]n all trials in the superior courts there shall be allowed two addresses to the jury for the State or plaintiff and two for the defendant, except in capital felonies, when there shall be no limit as to number." N.C.G.S. § 84-14 (1985). We note, however, that nothing in the statute provides that each attorney is entitled to question prospective jurors.

"The primary goal of the jury selection process is to ensure selection of a jury comprised only of persons who will render a fair and impartial verdict." *State v. Locklear*, 331 N.C. 239, 247, 415 S.E.2d 726, 731 (1992). Pursuant to N.C.G.S. § 15A-1214(c), counsel may question prospective jurors concerning their fitness or competency to serve as jurors to determine whether there is a basis to challenge for cause or whether to exercise a peremptory challenge. N.C.G.S. § 15A-1214(c) (1988). The trial judge has broad discretion to regulate jury *voir dire*. *State v. Lee*, 335 N.C. 244, 268, 439 S.E.2d 547, 559, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 162 (1994). "In order for a defendant to show reversible error in the trial court's regulation of jury selection, a defendant must show that the court abused its discretion and that he was prejudiced thereby." *Id.* The right to an adequate *voir dire* to identify unqualified jurors does not give rise to a constitutional violation unless the trial court's exercise of discretion in preventing a defendant from pursuing a relevant line of questioning renders the

trial fundamentally unfair. *Morgan v. Illinois*, 504 U.S. 719, 730 n.5, 119 L. Ed. 2d 492, 503 n.5 (1992); *Mu'Min v. Virginia*, 500 U.S. 415, 425-26, 114 L. Ed. 2d 493, 506 (1991).

In the instant case, the trial court did not abuse its discretion by allowing only one of defendant's two attorneys to question prospective jurors. We note that defendant does not argue, and the record fails to show, that because of the trial judge's control over the jury *voir dire*, any juror was accepted to which defendant had legal objections upon any ground. Indeed, defendant failed to exercise all of his peremptory challenges. We also note that defendant does not argue, and nothing in the record suggests, that during the jury *voir dire*, the trial judge prohibited or prevented defendant's attorneys from communicating, prompting, or consulting one another. *See State v. Frye*, 341 N.C. 470, 492-93, 461 S.E.2d 664, 675 (1995) (defendant's statutory entitlement to two attorneys and constitutional right to effective assistance of counsel were not violated where the trial court ruled that only one attorney from each side could make objections during jury *voir dire*), *cert. denied*, ⸺ U.S. ⸺, 134 L. Ed. 2d 526 (1996). Because the trial court did not "deny defendant the assistance of a second attorney or so drastically circumscribe the second attorney's role as to render the appointment of two attorneys meaningless," *id.* at 493, 461 S.E.2d at 675, we conclude that the statute was not violated.

**[2]** Defendant also contends that the trial court's ruling that only one attorney could question prospective jurors violated defendant's right to the assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 23 of the North Carolina Constitution. However, since defendant did not raise this constitutional issue at trial, he has failed to preserve it for our review. *See State v. Gibbs*, 335 N.C. 1, 42, 436 S.E.2d 321, 344 (1993), *cert. denied*, ⸺ U.S. ⸺, 129 L. Ed. 2d 881 (1994). Accordingly, we reject this assignment of error.

**[3]** By three assignments of error, defendant contends that the trial court's comments to prospective jurors created a constitutionally unacceptable risk that jurors would not disclose information that was prejudicial to defendant.

Defendant argues that, at several points during jury *voir dire*, the trial court made comments that discouraged reasonable prospective jurors from volunteering potentially prejudicial information which otherwise might have surfaced during questioning by the parties.

When one juror was being asked if she knew defendant, she responded, "Is he a graduate of Asheville High?" The court immediately said, "I don't want jurors asking questions." Three prospective jurors heard this statement by the judge. On the second day of jury selection, the judge said:

> [I]t may be possible that I excuse some of you from the jury box at various times while certain questions may be asked, and that I may do that in an effort so that something might not be said that would tend to taint some other jurors. So be cautious in what you may say, and do not say, and do not say anything that would tend to taint any other juror.

All but one of the prospective jurors seated thereafter heard this comment. Defendant essentially contends that the court's instruction had a tendency to discourage prospective jurors from disclosing information that they considered prejudicial. Defendant argues that this was hardly the foundation upon which an impartial jury might be selected.

We note, however, that control of jury *voir dire* rests within the sound discretion of the trial court. *See Lee*, 335 N.C. at 268, 439 S.E.2d at 559. In the instant case, defendant has failed to show that the trial court abused its discretion. The transcript shows that defense counsel actively questioned the jurors and that they responded to his questions. Defendant does not allege that he was dissatisfied with the jury as seated. Further, defendant did not exhaust his peremptory challenges but passed upon the jurors. Under these circumstances, defendant has failed to show prejudice. Accordingly, we reject these assignments of error.

By two assignments of error, defendant contends that the trial court committed reversible error by preventing defense counsel from adequately inquiring into prospective jurors' attitudes about the death penalty.

[4] The trial court sustained the prosecutor's objection to defense counsel's question, "What are your feelings about the death penalty?" The court stated that the question was too general. Defendant argues that questions of this nature are routinely permitted and are essential to assess the jurors' ability to be fair to a capital defendant. Defendant concedes, however, that he did not exhaust his peremptory challenges, and therefore, error was not preserved. *State v. Conner*, 335 N.C. 618, 440 S.E.2d 826 (1994). Nevertheless, defendant argues that this requirement serves no valid purpose. After carefully

considering defendant's argument, we find no compelling reason to depart from our precedent. Accordingly, we reject these assignments of error.

[5] By three assignments of error, defendant contends that the trial court erred in excluding admissible, relevant, and potentially compelling mitigating evidence in violation of the Eighth Amendment to the United States Constitution.

During defendant's direct examination of his mother, the following exchange took place:

Q And I think you earlier testified that one of your sons is deceased?

A Yes. My eldest son, Daniel Fullwood, Jr., was murdered in New York City September 16, 1984.

Q What was [defendant's] reaction to that event?

[PROSECUTOR]: Objection; calls for hearsay.

COURT: Sustained.

After the trial court sustained the prosecutor's objection to this question, defense counsel pursued another line of questioning. Thereafter, out of the presence of the jury, defense counsel made an offer of proof to reflect what defendant's mother's answer would have been. During defendant's offer of proof, the following exchange took place with defense counsel questioning defendant's mother:

Q What was [defendant's] reaction to the death of his brother about five months prior to [the victim's] murder?

A [Defendant] was very upset at the death of his brother. He was there at the nursing home when I received the call about the death of my son.

Q What did he do—did you see him do or say something?

A Well, he called [the victim] and [the victim] came on over. She came in from work. She was right there with me. . . . But [defendant] was very upset about the death of his brother.

Q Did [defendant] continue to be upset about the death of his brother?

A I don't think he ever really got over it completely. He was depressed and everything.

Q  Was [your son] who died [defendant's] older brother?

A  He was, and they were very close. He was my first-born child.

Q  You indicated that [defendant] was depressed over the loss of his brother?

A  He was.

> COURT: Now [defense counsel], you haven't asked those questions previously.

> [DEFENSE COUNSEL]: No, sir, but I asked what [defendant's] reaction was to his brother's death and you sustained that.

> COURT: Yes, sir, I did.

> [DEFENSE COUNSEL]: Would you allow me to ask these questions?

> COURT: I rule upon them when they're asked. . . .

Following defendant's offer of proof, the jury returned. However, defendant did not question defendant's mother further regarding defendant's reaction to his brother's death.

The "state of a person's health, the emotions he displayed on a given occasion, or other aspects of his physical appearance are proper subjects for lay opinion." *State v. Jennings*, 333 N.C. 579, 607, 430 S.E.2d 188, 201, *cert. denied*, —— U.S. ——, 126 L. Ed. 2d 602 (1993). Lay opinion on the emotional state of another is permissible if rationally based on the perception of the witness and helpful to a clear understanding of the witness' testimony. N.C.G.S. § 8C-1, Rule 701 (1992); *State v. Hutchens*, 110 N.C. App. 455, 429 S.E.2d 755, *disc. rev. denied*, 334 N.C. 437, 433 S.E.2d 181 (1993); *see also* N.C.G.S. § 8C-1, Rule 602 (1992) (witness may not testify to a matter unless he has personal knowledge of the matter).

At the time defendant's mother was asked the question regarding defendant's reaction to his brother's death, no evidence had been presented that defendant's mother had personal knowledge of defendant's mental state. Although testimony was presented during *voir dire* to establish that defendant's mother had personal knowledge sufficient to answer the question, defendant did not pursue the matter again before the jury. Thus, defendant has failed to show prejudicial error.

STATE v. FULLWOOD

[343 N.C. 725 (1996)]

**[6]** Defendant also contends that the trial court erred in not allowing defendant to testify as to whether the victim had done anything to assist defendant in getting treatment for himself and whether defendant wished that he had gotten treatment prior to the commission of this offense. At trial, defendant testified that a few days before the murder, he returned to Asheville from an out-of-town trip and that he contacted the victim two days later and told her that he had been using cocaine and had thoughts of harming her. Defendant further testified that the victim told him that he "needed to get some help" and that he did not. Defendant argues that the trial court's ruling precluded him from showing how he had not followed the advice of the victim and how he regretted not getting help that would have saved her life.

During the direct examination of defendant, the following exchange took place:

Q  Did [the victim] suggest anything that you should do?

A  Well, she said that I needed to get some help.

. . . .

Q  Did you get help, [defendant]?

A  No, I didn't.

Q  Do you wish now that you had?

A  Yes.

[PROSECUTOR]: Objection.

COURT: Sustained.

The State argues that the trial court was correct in sustaining the objection because the question was leading. In *State v. Howard*, 320 N.C. 718, 721-22, 360 S.E.2d 790, 792 (1987), we said:

The traditional North Carolina view is that, as a general proposition, leading questions are undesirable because of the "danger that they will suggest the desired reply to an eager and friendly witness. In effect, lawyers could testify, their testimony punctuated only by an occasional 'yes' or 'no' answer." *State v. Hosey*, 318 N.C. 330, 334, 348 S.E.2d 805, 808 (1986). However, the fact that a question may be answered yes or no does not make it leading. *State v. Thompson*, 306 N.C. 526, 529, 294 S.E.2d 314, 316-17 (1982) (quoting *State v. Britt*, 291 N.C. 528, 539, 231 S.E.2d 644,

652 [(1977)]). Whether a question is leading "depends not only on the form of the question but also on the context in which it is put." *State v. Thompson,* 306 N.C. at 529, 294 S.E.2d at 317.

Considering both the form of the question and the context in which it was put, we believe that the question was objectionable as leading defendant to defense counsel's desired response. It is well settled in this state that a ruling on the admissibility of a leading question is in the sound discretion of the trial court, *Hosey,* 318 N.C. at 333-34, 348 S.E.2d at 808, and that these rulings are reversible only for an abuse of discretion, *State v. Riddick,* 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986). In the instant case, we find no abuse of discretion by the trial court. Accordingly, we reject these assignments of error.

[7] By another assignment of error, defendant contends that the trial court violated his right to fundamental fairness and his right to make a complete defense by not allowing the defense to bolster the credibility of a key defense witness concerning a crucial portion of his testimony by presenting evidence that the witness had previously made a statement that was consistent with that testimony.

During the hearing on the motion to suppress defendant's confession, the State disclosed that it had a previously undisclosed portion of the police interview with defendant. This information consisted of statements made by defendant to Detective Walter Robertson, one of the investigators who had interrogated defendant in the hospital several days after the defendant's surgery for a self-inflicted abdominal wound.

Robertson testified in the suppression hearing that after he and Sergeant Ted Lambert had turned off the tape recorder when recording defendant's statement, Lambert left the room at defendant's request. Defendant then began to cry and told Robertson, whom defendant had known for fifteen years, that he was on cocaine the night before the killing and that he had lost control and killed the victim. When Lambert returned to the interrogation room, defendant repeated the statement but added that the victim had stabbed him first.

Robertson, when called to the witness stand by defendant, testified about the contents of the private conversation. When defense counsel attempted to elicit information from Robertson that he had told the district attorney nine years earlier about this private conversation, the State objected, and the trial court sustained the objection.

Defendant argues that the court's ruling allowed the jurors to discredit Robertson's testimony by making them think that he had held this information to himself. Defendant argues that Robertson's credibility was further attacked by the fact that Robertson was a friend of defendant's family and had known defendant for fifteen years and that Robertson did not reduce the statement to writing. Defendant contends that the testimony of Robertson was relevant to show that defendant was remorseful shortly after the victim's death. Defendant argues that he was prejudiced by the trial court's ruling in that no juror found as a mitigating circumstance that defendant displayed remorse or sorrow for what he had done.

Assuming *arguendo* that defendant's challenge is one of constitutional proportion, we nevertheless conclude that any error in excluding this testimony was harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1988). A careful review of the transcripts in the instant case indicates that the jurors heard the account of the private conversation from both defendant and Robertson and that these accounts were substantially the same. We do not believe that Robertson's testimony that he had previously relayed this information to the district attorney would have caused any juror to find that defendant displayed remorse or sorrow for what he had done. Thus, the error, if any, was harmless beyond a reasonable doubt. Accordingly, we reject this assignment of error.

[8] By another assignment of error, defendant contends that the trial court erred in allowing the prosecutors' arguments to the jury that this was one of the worst murders anyone had ever heard of and one of the worst ever prosecuted in the sixty-year history of the Buncombe County courthouse. Defendant contends that these arguments denied him due process of law and violated his rights under the Eighth Amendment to the United States Constitution.

Defendant notes that the sole aggravating circumstance submitted to the jury in this case was that the murder was especially heinous, atrocious, or cruel. Defendant argues that the State used its closing arguments to improperly and unconstitutionally lend weight to this circumstance and to show prejudice not based on the evidence or the law. During closing arguments, the prosecutor argued:

> If he told the whole truth, that would exonerate her, and she would rest in peace and the resentment he carries for the fact that he had to go to prison over this and he might get sentenced to death over this still lingers in him, and the whole truth would be

that he massacred her, that he committed one of the worst murders anybody has ever heard of—

[DEFENSE COUNSEL]: Objection.

[PROSECUTOR]: —24 stab wounds

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Overruled.

[PROSECUTOR]: That is an especially heinous, atrocious and cruel crime.

Thereafter, the second prosecutor argued:

Ladies and Gentlemen, if you look up at the wall behind you, there's some pictures of the fellows who have sat in this courtroom as Judges. The Buncombe County Courthouse was built back in the thirties. It's been here for over 60 years. We try hundreds of cases each year in this courthouse, so over that period there have been thousands of cases heard in this room, and I submit to you that there have not been many that were heard worse than this case.

[DEFENSE COUNSEL]: Objection. I ask that the jury be instructed, Your Honor.

COURT: Overruled.

It is well settled that the arguments of counsel are left largely to the control and discretion of the trial judge and that counsel will be granted wide latitude in the argument of hotly contested cases. *State v. Huffstetler*, 312 N.C. 92, 112, 322 S.E.2d 110, 123 (1984), *cert. denied*, 471 U.S. 1009, 85 L. Ed. 2d 169 (1985). Counsel is permitted to argue the facts which have been presented, as well as reasonable inferences which can be drawn therefrom. *State v. Hamlet*, 312 N.C. 162, 172, 321 S.E.2d 837, 844 (1984). Conversely, counsel is prohibited from arguing facts which are not supported by the evidence. *State v. Lynch*, 300 N.C. 534, 551, 268 S.E.2d 161, 171 (1980). These principles apply not only to ordinary jury arguments, but also to arguments made at the close of the sentencing phase in capital cases. *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979).

In the instant case, we note that defendant makes no argument that the evidence presented at trial was insufficient to support the jury's finding of the aggravating circumstance that this murder was

STATE v. FULLWOOD

[343 N.C. 725 (1996)]

especially heinous, atrocious, or cruel. Instead, defendant argues that the prosecutors gave an improper assessment of the evidence by comparing this case with other cases tried in Buncombe County over the past sixty years. We conclude that the record in this case supports the prosecutors' arguments that this crime was especially heinous, atrocious, or cruel. After reviewing the prosecutors' arguments in their entirety, we conclude that while they argued vigorously for imposition of the death penalty, their arguments were not such as to violate defendant's rights under the Eighth Amendment or to deny him due process of law. Accordingly, we reject this assignment of error.

**[9]** By another assignment of error, defendant contends that the trial court denied him due process of law by refusing to allow the jury to consider life without parole as the sentencing alternative to death. Defendant argues that because the General Assembly recently amended N.C.G.S. § 15A-2002 to require the trial court to instruct the jury during a capital sentencing proceeding that "a sentence of life imprisonment means a sentence of life without parole," he was entitled to such an instruction in this case. N.C.G.S. § 15A-2002 (Supp. 1995). We disagree.

Since N.C.G.S. § 15A-2002 applies prospectively only and was not made to apply retroactively, it has no effect in this case. *See State v. Green*, 336 N.C. 142, 157, 443 S.E.2d 14, 23, *cert. denied*, —— U.S. ——, 130 L.Ed.2d 547 (1994). Defendant "concedes" that "[r]etroactive application of the new legislation in question in the case at bar would violate the prohibition against *ex post facto* laws because it makes the minimum sentence for first degree murder more onerous, life without parole, than life with the possibility of parole after twenty years, the punishment in effect when the crime was committed." Nevertheless, defendant argues that he "waived his *ex post facto* objections by stating on the record that he wished to be placed in the same position as defendants whose offenses occurred after October 1, 1994."

The amended statute specifically provides:

This act becomes effective October 1, 1994, and applies only to offenses occurring on or after that date. Prosecutions for, or sentences based on, offenses occuring before the effective date of this act are not abated or affected by the repeal or amendment in this act [or] any statute, and the statute that would be applicable to those prosecutions or sentences but for the provisions of this act remain applicable to those prosecutions or sentences.

Act of March 26, 1994, ch. 24, sec. 14(b), 1994 N.C. Sess. Laws, 82, 96. In the instant case, defendant's offense occurred in 1985, some nine years before the effective date of the amended statute. Additionally, defendant was sentenced after rehearing on 18 August 1994, also prior to the effective date of the amended statute. Under these circumstances, defendant had no right to be sentenced under the amended statute, and it would have been improper for the trial judge to instruct the jury contrary to the statute then in effect. Accordingly, we reject this assignment of error.

[10]   By another assignment of error, defendant contends that the trial court committed reversible error by failing to exercise its discretion in determining the proper response to a jury request to review a portion of defendant's mother's testimony. We disagree.

Following the court's charge to the jury, the jury deliberated one hour and forty-five minutes before recessing. Shortly after resuming deliberations, the jury sent a note requesting certain exhibits and asking to review a portion of defendant's mother's testimony having to do with a racially motivated attack on defendant when he was a child. The trial judge stated for the record that the testimony of defendant's mother would not be sent into the jury room because the previous court reporter who had recorded the testimony had left. The trial judge added that the decision was in his discretion. When the jury returned to the courtroom, the judge explained the situation with the two reporters but added that the decision was in his discretion and reminded the jury to use its recollection of the evidence.

In *State v. Ashe*, 314 N.C. 28, 34, 331 S.E.2d 652, 656 (1985), we said:

> [N.C.G.S. § 15A-1233] imposes two duties upon the trial court when it receives a request from the jury to review evidence. First, the court must conduct all jurors to the courtroom. Second, the trial court must exercise its discretion in determining whether to permit requested evidence to be read to or examined by the jury together with other evidence relating to the same factual issue. Insofar as the statute requires the judge to exercise discretion, it is merely a codification of the common law rule. Insofar as the statute requires the trial court to summon all jurors to the courtroom, it is a codification of a long-standing practice in the trial courts of this state.

In the instant case, the question is whether the trial court exercised its discretion in denying the jury's request to review the testimony. After reviewing the transcripts and the record, we are convinced that the trial judge plainly exercised his discretion and did not rely solely on the fact that the transcript was not readily available. Defendant does not contend that the trial court abused its discretion. This assignment of error is without merit.

## PRESERVATION ISSUES

Defendant raises additional assignments of error which he concedes have been decided against him by this Court: (1) the trial court violated defendant's due process rights by denying his motion to inform jurors of parole eligibility; (2) the trial court violated defendant's right to effective assistance of counsel, to due process of law, and to reliability in capital sentencing by denying his motion for individual jury *voir dire*; (3) the trial court's instructions defining the burden of proof applicable to mitigating circumstances violated the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution because the instructions used the inherently ambiguous and vague terms "satisfaction" and "satisfy" to define the burden of proof, thus permitting jurors to establish for themselves the legal standard to be applied to the evidence; (4) the trial court's instructions that permitted jurors to reject submitted mitigation evidence on the basis that it had no mitigating value violated the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; (5) the trial court violated defendant's rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution by denying defendant the opportunity to examine each juror challenged by the State during death-qualification prior to his or her excusal and by excusing jurors defendant was not permitted to question; (6) the trial court's use of the term "may" in sentencing Issues Three and Four made consideration of proven mitigation discretionary in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; (7) the trial court's failure to prevent the improper and inflammatory argument of the prosecutor in the penalty phase denied defendant due process of law, the right to be free of cruel and unusual punishment, and the right to effective assistance of counsel; and (8) the trial court committed reversible error in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution by submitting to the jury the "especially heinous, atrocious, or cruel"

aggravating circumstance based upon instructions that failed adequately to limit the application of this inherently vague and overbroad circumstance.

Defendant raises these issues for the purpose of permitting this Court to reexamine its prior holdings and also for the purpose of preserving them for any possible further judicial review of this case. We have carefully considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. Accordingly, we reject these assignments of error.

## PROPORTIONALITY REVIEW

[11] Having concluded that defendant's capital resentencing proceeding was free of prejudicial error, we turn to the duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this Court in capital cases. It is our duty in this regard to ascertain: (1) whether the record supports the jury's findings of the aggravating circumstances on which the sentence of death was based; (2) whether the death sentence was entered under the influence of passion, prejudice, or other arbitrary consideration; and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and defendant. N.C.G.S. § 15A-2000(d)(2) (Supp. 1995).

In the instant case, the original jury found defendant guilty of first-degree murder under the theory of malice, premeditation, and deliberation. It also convicted defendant of felonious breaking and entering. The trial court submitted one aggravating circumstance to the jury: that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9). The jury found this aggravating circumstances to exist. One or more jurors found the following mitigating circumstances: (1) the murder was committed while defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2); (2) at the time of the murder, defendant suffered from alcohol and substance abuse; (3) defendant had never been convicted of any felony involving violence prior to 29 March 1985; (4) defendant had never been convicted of any crime involving violence to another person prior to 29 March 1985; (5) defendant was raised in a home where his father abused alcohol and physically abused his mother; (6) defendant has not received any disciplinary actions or write-ups in the nine and one-half years since he has been incarcerated; (7) defendant has been a model inmate at Central

Prison; (8) defendant has consistently acted in a mature, responsible manner in dealing with prison personnel; (9) defendant has shown determination in pursuing his G.E.D., despite borderline intellectual functioning; (10) defendant has grown and matured spiritually in his religious faith since he has been at Central Prison, (11) defendant has shown the capacity to continue to adjust well to prison life; and (12) the catchall circumstance, N.C.G.S. § 15A-2000(f)(9).

After thoroughly examining the record, transcripts, and briefs in the instant case, we conclude that the record fully supports the aggravating circumstance found by the jury. Further, we find no indication that the sentence of death in this case was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We must turn then to our final statutory duty of proportionality review.

In our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895 (1994). We have found the death penalty disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). We conclude that this case is not substantially similar to any case in which this Court has found the death penalty disproportionate.

Of the seven cases in which this Court has found the death penalty disproportionate, only two involved the aggravating circumstance that the murder was especially heinous, atrocious, or cruel. *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653; *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170. Neither requires a finding that the death penalty is disproportionate in this case.

In *Stokes*, defendant and three young men robbed the victim's place of business. During the robbery, one of the assailants severely beat the victim about the head, killing him. *Stokes*, 319 N.C. at 3, 352 S.E.2d at 654. The facts of *Stokes* are distinguishable from the present

STATE v. FULLWOOD

[343 N.C. 725 (1996)]

case. First, the defendant in *Stokes* was seventeen years old; defendant in this case was twenty-nine years old. Second, in *Stokes* there was no evidence showing who was the leader in the robbery or that the defendant deserved a death sentence any more than an older participant who received a life sentence. In the instant case, defendant was the sole perpetrator of this brutal murder. Third, the defendant in *Stokes* was convicted on a felony murder theory, and there was little or no evidence that he premeditated the killing. Here, defendant was convicted on the basis of premeditation and deliberation, and there was ample evidence of premeditation and deliberation. Fourth, in *Stokes*, the jury found that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired. In the instant case, this mitigating circumstance was submitted to the jury and rejected.

In *Bondurant*, the defendant shot the victim while they were riding together in a car. *Bondurant*, 309 N.C. at 677, 309 S.E.2d at 173. The Court "deem[ed] it important in amelioration of defendant's senseless act that immediately after he shot the victim, he exhibited a concern for [the victim's life] and remorse for his action by directing the driver of the automobile to the hospital." *Id.* at 694, 309 S.E.2d at 182. The defendant in *Bondurant* then went inside to secure medical treatment for the victim. In the instant case, by contrast, defendant followed the infliction of the fatal wound with a self-inflicted stab wound in an attempt to convince law enforcement authorities that the victim had attacked him. When ambulance drivers arrived, defendant did not express any concern for the victim; instead, he acted as if the victim had stabbed him. The trial court submitted and the jury rejected the mitigating circumstance that defendant had expressed remorse about killing the victim. In the instant case, defendant took no actions comparable to the actions taken by the defendant in *Bondurant*, and his later expressions of remorse are hardly comparable to the actions of the defendant in *Bondurant*.

It is also proper to compare this case to those where the death sentence was found proportionate. *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. Although we have repeatedly stated that we review all of the cases in the pool when engaging in our statutory duty, it is worth noting again that "we will not undertake to discuss or cite all of those cases each time we carry out our duty." *Id.* It suffices to say here that we conclude the present case is similar to certain cases in which we have found the death sentence proportionate.

.

STATE v. FULLWOOD

[343 N.C. 725 (1996)]

There are six similar cases in the proportionality pool in which the jury recommended a sentence of death after finding as an aggravating circumstance that the murder was especially heinous, atrocious, or cruel. *See State v. Syriani,* 333 N.C. 350, 428 S.E.2d 118 (the defendant stabbed his wife while she was in an automobile with their ten-year-old son, who tried to stop the defendant), *cert. denied,* —— U.S. ——, 126 L. Ed. 2d 341 (1993); *State v. Spruill,* 320 N.C. 688, 360 S.E.2d 667 (1987) (the defendant killed his former girlfriend in the parking lot of a nightclub by cutting her throat), *cert. denied,* 486 U.S. 1061, 100 L. Ed. 2d 934 (1988); *State v. Gladden,* 315 N.C. 398, 340 S.E.2d 673 (the defendant slashed his lover's husband's throat, shot him twice, dragged him into a ditch, and then shot him two more times in the face), *cert. denied,* 479 U.S. 871, 93 L. Ed. 2d 166 (1986); *Huffstetler,* 312 N.C. 92, 322 S.E.2d 110 (the defendant beat his mother-in-law to death with a cast-iron skillet, inflicting multiple wounds to her head, neck, and shoulders); *State v. Boyd,* 311 N.C. 408, 319 S.E.2d 189 (1984) (the defendant killed his estranged girlfriend by stabbing her repeatedly in front of her mother and daughter), *cert. denied,* 471 U.S. 1030, 84 L. Ed. 2d 324 (1985); *State v. Martin,* 303 N.C. 246, 278 S.E.2d 214 (the defendant shot and killed his wife in the presence of their young child), *cert. denied,* 454 U.S. 933, 70 L. Ed. 2d 240 (1981). We find these cases to be most comparable to the one at hand.

In *Syriani,* the most similar of the six cases, the defendant accosted his estranged wife and stabbed her to death. Following the assault, the defendant walked calmly back to his van and drove to a nearby fire station, where he told a fireman he needed medical attention because he had been in a fight. *Syriani,* 333 N.C. at 359, 364, 428 S.E.2d at 121-22, 124. The jury found as the single aggravating circumstance that the murder was especially heinous, atrocious, or cruel. The jury also found eight mitigating circumstances. *Id.* at 401, 428 S.E.2d at 146. This Court concluded that the sentence of death was not disproportionate based on evidence similar to that in the present case, including the nature of the killing, the lack of remorse or pity, and the defendant's cool actions after the murder. *Id.* at 401-06, 428 S.E.2d at 146-49. In the instant case, defendant expressed no concern for the victim and obtained no assistance for her. Instead, he faked a suicide attempt and told the police that the victim had attacked him.

After comparing this case to other roughly similar cases as to the crime and the defendant, we conclude that this case has the charac-

**STATE v. FULLWOOD**

[343 N.C. 725 (1996)]

teristics of first-degree murders for which we have previously upheld the death penalty as proportionate. Accordingly, we cannot conclude that defendant's death sentence is excessive or disproportionate. We hold that defendant received a fair trial, free of prejudicial error.

NO ERROR.

Justice ORR did not participate in the consideration or decision of this case.