STATE OF NORTH CAROLINA v. THOMAS M. LARRY

No. 189A95

(Filed 7 March 1997)

**1. Jury § 146 (NCI4th)— capital murder—jury selection— instruction—no error**

There was no prejudicial error during jury selection for a capital first-degree murder prosecution where the court instructed prospective jurors that "[i]f the jury finds beyond a reasonable doubt the existence of all facts necessary to impose the death penalty, the law of North Carolina requires that the juror vote to recommend that the defendant be sentenced to death." The judge emphasized to the jury that the instruction contained general information about the proceedings, explained that he would give full instructions after the presentation of the evidence, and full and proper instructions were given at the sentencing proceeding.

**Am Jur 2d, Criminal Law § 628; Homicide § 510.**

**2. Jury § 119 (NCI4th)— capital murder—jury selection— defense questions excluded—no error**

The defendant in a capital first-degree murder prosecution did not show an abuse of discretion or prejudice where the court sustained the State's objections to two of defendant's questions during jury selection. Defendant was allowed to ask other questions to achieve the same inquiry sought by both questions and no juror was accepted to whom defendant had legal objections upon any ground.

**Am Jur 2d, Criminal Law § 913; Jury § 210.**

**3. Jury § 112 (NCI4th)— capital murder—jury selection— motion for individual voir dire—victim a police officer— relevant—denial of motion not error**

The trial court did not err during jury selection for a capital first-degree murder prosecution by denying defendant's motion for individual *voir dire* of prospective jurors or by denying defendant's motion to disqualify the venire where both motions were based on defendant's contention that the fact that the victim was a police officer was not relevant. The court did not err by allowing the State to present evidence that the victim was a

police officer, there was no need for individual *voir dire* to prevent prospective jurors from learning that fact, and there was no error in not disqualifying the jury because they heard some of the prospective jurors volunteer that they knew this case involved the killing of an officer.

**Am Jur 2d, Evidence § 328; Jury § 198.**

**4. Criminal Law § 363 (NCI4th Rev.)— murder of police officer—uniformed police officers in courtroom—motion to exclude denied—no abuse of discretion**

The trial court did not abuse its discretion in a capital first-degree murder prosecution for the killing of an off-duty police officer by denying defendant's motion to exclude uniformed police officers from the courtroom because they would improperly influence the jury. The court stated in denying the motion that it would consider the motion further if there was anything that went beyond an occasional appearance on an individual basis by a uniformed officer who might be a witness or a spectator.

**Am Jur 2d, Trial § 254.**

**5. Homicide § 257 (NCI4th)— capital murder—premeditation and deliberation—sufficiency of evidence**

There was sufficient evidence of premeditation and deliberation in a capital first-degree murder prosecution where defendant's conduct before and after the killing supports a finding that the scuffle with the victim did not overcome defendant's faculties and reason. Defendant carried a loaded gun into a Food Lion and used it to accomplish a robbery; a witness testified that she saw defendant point the gun at the victim and say, "If you move, you're dead"; a Food Lion cashier who witnessed the incident heard the robber say, "Don't move or I'll kill you"; and several witnesses testified that defendant fired two or more shots with a pause in between.

**Am Jur 2d, Homicide §§ 46, 52, 228, 439, 472.**

**Jury instructions as to presumption of deliberation and premeditation. 96 ALR2d 1435.**

**Modern status of the rules requiring malice aforethought, deliberation, or premeditation as elements of murder in the first degree. 18 ALR4th 961.**

STATE v. LARRY

[345 N.C. 497 (1997)]

Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was committed to avoid arrest or prosecution, to effect escape from custody, to hinder governmental function or enforcement of law, and the like—post-*Gregg* cases. 64 ALR4th 755.

6. Criminal Law § 914 (NCI4th Rev.)— capital murder— instructions—unanimity on theory of murder—no plain error

There was no plain error in a capital first-degree murder prosecution where defendant contended that the instructions given by the court did not require the jury to be unanimous on the theory of first-degree murder it used to support its verdict. A similar argument was overruled in *State v. Alford*, 339 N.C. 562, the record of which included a verdict sheet similar to the one in this case, as well as a polling of the jurors. The jury here received proper instructions and there is no risk that the jury was not unanimous as to either theory upon which it based its finding of guilty of first-degree murder.

Am Jur 2d, Criminal Law §§ 675, 918; Homicide § 511; Trial §§ 838, 1437.

7. Homicide § 552 (NCI4th)— capital murder—instruction on second-degree murder refused—no error

The trial court did not err in a capital prosecution for first-degree murder by not instructing the jury on the lesser included offense of second-degree murder. Although defendant contends that it is unconstitutional to require him to negate premeditation and deliberation in order to be entitled to an instruction on second-degree murder, the State has the burden of proving the elements of first-degree murder beyond a reasonable doubt. Due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction.

Am Jur 2d, Homicide §§ 496, 511, 530, 533, 544.5; Trial §§ 1427, 1430.

Modern status of law regarding cure of error in instruction as to one offense by conviction of higher or lesser offense. 15 ALR4th 118.

**8. Homicide §§ 552, 558 (NCI4th)— capital murder—instruction on second-degree murder and manslaughter—carrying gun to robbery—refusal to give instruction—no error**

The evidence in a capital prosecution for first-degree murder did not support an instruction on the lesser included offenses of second-degree murder and manslaughter; the uncontradicted evidence that defendant carried a loaded gun to commit a robbery and threatened to kill the victim if the victim moved is sufficient positive evidence of premeditation and deliberation.

Am Jur 2d, Homicide §§ 496, 511, 530, 533, 544.5; Trial §§ 1427, 1430.

Modern status of law regarding cure of error in instruction as to one offense by conviction of higher or lesser offense. 15 ALR4th 118.

**9. Homicide § 588 (NCI4th)— capital murder—imperfect self-defense—instruction refused—no error**

The trial court did not err in a capital prosecution for first-degree murder by not instructing the jury on imperfect self-defense where there was positive, uncontradicted evidence that defendant formed an intent to kill with malice and after premeditation and deliberation. Defendant did not act without murderous intent.

Am Jur 2d, Homicide §§ 249, 519.

Modern status and rules as to burden and quantum of proof to show self-defense. 43 ALR3d 221.

Accused's right in homicide case to have jury instructed as to both unintentional shooting and self-defense. 15 ALR4th 983.

**10. Evidence and Witnesses § 82 (NCI4th)— capital murder—victim's status as police officer—relevant**

The trial court did not err in a first-degree murder prosecution by allowing the State to present evidence that the decedent was a police officer. Although defendant contends that this evidence was not relevant and that the danger of prejudice outweighed the probative value, the victim's status as a police officer led him to pursue defendant, which led to defendant shooting him. The actions of an officer who arrived at the scene of the crime shortly after the shooting and the identity of the victim as

a police officer are clearly circumstances which throw light upon the crime. Other witnesses' references to the victim as "Officer Buitrago" simply incorporated the title "Officer."

**Am Jur 2d, Criminal Law § 378; Evidence § 328.**

**Sympathy to accused as appropriate factor in jury consideration. 72 ALR3d 842.**

11. **Criminal Law § 1366 (NCI4th Rev.)— capital sentencing— killing during course of robbery—theory of conviction—no error in submitting**

The trial court did not err during a capital sentencing proceeding by submitting the aggravating circumstance that the killing was committed during the course of an armed robbery where defendant argued that the conviction based on premeditation and deliberation was infirm, so that the only theory of conviction was the felony murder rule and the court erred by submitting the underlying felony as an aggravating circumstance. However, the trial court did not err in relation to the conviction based on premeditation and deliberation and the trial court properly submitted the circumstance. N.C.G.S. § 15A-2000(e)(5).

**Am Jur 2d, Homicide §§ 43, 46, 554.**

**Sufficiency of evidence, for purpose of death penalty, to establish statutory aggravating circumstance that murder was committed to avoid arrest or prosecution, to effect escape from custody, to hinder governmental function or enforcement of law, and the like—post-*Gregg* cases. 64 ALR4th 755.**

**Sufficiency of evidence, for death penalty purposes, to establish statutory aggravating circumstance that murder was committed in course of committing, attempting, or fleeing from other offense, and the like—post *Gregg* cases. 67 ALR4th 887.**

12. **Criminal Law §§ 1381, 694 (NCI4th Rev.)— capital sentencing—victim an off-duty police officer—mitigating circumstance that victim a voluntary participant in crime— not submitted**

The trial court did not commit plain error in a capital sentencing proceeding by failing to submit the statutory mitigating circumstance that the victim was a voluntary participant in

defendant's homicidal conduct or consented to the homicidal act where the victim was an off duty police officer who pursued defendant after a robbery. The evidence did not support the submission of the N.C.G.S. § 15A-2000(f)(3) mitigating circumstance in that the victim had nothing to do with the armed robbery and merely attempted to apprehend defendant when defendant fled. Furthermore, the court submitted a nonstatutory mitigating circumstance of whether the shot was fired as a result of a struggle between defendant and the victim and whether that had mitigating value.

**Am Jur 2d, Criminal Law §§ 598, 599, 628; Homicide § 554; Trial § 1760.**

**13. Evidence and Witnesses § 2877 (NCI4th)— capital sentencing—cross-examination of defendant**

Defendant was not prejudiced in a capital sentencing hearing by the prosecutor's cross-examination of him where defendant argued that the total effect of the prosecutor's questions about defendant's reliance on counsel, his plea to a prior crime, and a suggestion that defendant testified because his counsel told him that was the only way to save his life violated his constitutional rights to counsel and to enter a plea of guilty to the prior crime while maintaining his innocence. Defendant did not request a jury instruction on these rights, concedes that the prosecutor is allowed to impeach by evidence of prior crimes, and the court sustained defendant's objections to improper questions or comments by the prosecutor.

**Am Jur 2d, Criminal Law § 985.**

**Modern status of rules and standards in state courts as to adequate representation of client. 2 ALR4th 27.**

**Adequacy of defense counsel's representation of criminal client regarding prior conviction. 14 ALR4th 227.**

**14. Criminal Law §§ 433, 475 (NCI4th Rev.)— capital sentencing—prosecutors' argument—defendant's failure to testify at guilt phase—failure to plead guilty**

References in the prosecutor's closing argument in a capital sentencing proceeding to defendant's failure to testify or to his election to plead not guilty were harmless beyond a reasonable doubt. The prosecutor's single reference to defendant's failure to

testify at the guilt-innocence proceeding could not have contributed to the imposition of the death penalty because the reference was made during the sentencing proceeding in which defendant testified; the jury had already found defendant guilty and there is no danger that the reference caused the jury to presume defendant's guilt or to regard his silence as indicative of guilt. The single reference to defendant's failure to plead guilty was made during an argument that the jury should not find the existence of the nonstatutory mitigating circumstance that defendant had acknowledged wrongdoing and the prosecutor offered other reasons for not finding this circumstance. While there may be a possibility that the reference could have persuaded one or more jurors not to find the existence of this mitigating circumstance, the weighing process was not compromised.

**Am Jur 2d, Appellate Review § 763; Criminal Law § 705; Trial § 577.**

**Violation of federal constitutional rule (*Griffin v. California*) prohibiting adverse comment by prosecutor or court upon accused's failure to testify, as constituting reversible or harmless error. 24 ALR3d 1093.**

15. **Criminal Law §§ 464 (NCI4th Rev.)— capital sentencing— prosecutor's argument—possibility of parole—death as deterrent**

Any error in a capital sentencing hearing was harmless beyond a reasonable doubt where defendant contended that the prosecutor improperly urged the jury to consider the possibility of parole in its sentencing deliberations in three sections of his argument. The court sustained defendant's objections to the first statement, and the defendant failed to object to the second and third. These arguments focused on the importance of the jury's duty and suggested that the death penalty would specifically deter defendant from committing future crimes, both permissible lines of argument.

**Am Jur 2d, Criminal Law § 628; Trial §§ 566, 575, 576.**

**Prejudicial effect of statement of prosecutor as to possibility of pardon or parole. 16 ALR3d 1137.**

**Propriety, under Federal Constitution, of evidence or argument concerning deterrent effect of death penalty. 78 ALR Fed. 553.**

**16. Criminal Law § 458 (NCI4th Rev.)— capital sentencing— prosecutor's argument—characterizations of mitigating circumstances**

The prosecutor's argument in a capital sentencing hearing was not improper where defendant argued that the prosecutor misrepresented the nature of mitigation by characterizing mitigation as credit for defendant or an excuse for his crime. Prosecutors may legitimately attempt to deprecate or belittle the significance of mitigating circumstances, and the trial court correctly instructed the jury on mitigation.

**Am Jur 2d, Criminal Law § 598; Homicide §§ 463, 464; Trial § 572.**

**17. Criminal Law § 444 (NCI4th Rev.)— capital sentencing— prosecutor's argument—defendant's character**

The prosecutor's arguments about defendant's character in a capital sentencing hearing were not improper; the character of a defendant is an appropriate consideration during sentencing and several of defendant's nonstatutory mitigating circumstances placed his character at issue.

**Am Jur 2d, Criminal Law § 598; Homicide §§ 298, 463; Trial § 682.**

**18. Criminal Law § 454 (NCI4th Rev.)— capital sentencing— prosecutor's argument—victim a police officer—a martyr to the cause of good**

The prosecutor's argument in a capital sentencing hearing did not render the trial fundamentally unfair where the defendant contended that the prosecutor's argument that the victim, a police officer, was a martyr to the cause of good was improperly designed to appeal to the jury's sympathy for the victim.

**Am Jur 2d, Criminal Law § 291; Trial §§ 572, 649, 666.**

**Sympathy to accused as appropriate factor in jury consideration. 72 ALR3d 842.**

**19. Criminal Law § 449 (NCI4th Rev.)— capital sentencing— prosecutor's argument—judgment of prosecutor**

The prosecutor in a capital sentencing hearing did not improperly ask the jury to rely on the judgment of the prosecutor.

**Am Jur 2d, Criminal Law § 291; Homicide § 463; Trial §§ 499, 572.**

**Propriety and prejudicial effect of prosecutor's argument to jury indicating his belief or knowledge as to guilt of accused—modern state cases. 88 ALR3d 449.**

20. **Criminal Law § 467 (NCI4th Rev.)— capital sentencing—prosecutor's argument—presumptions from the evidence**

Statements by the prosecutor in a capital sentencing hearing which defendant contended were outside the evidence were based on reasonable inferences from the evidence presented and were within the wide latitude allowed to counsel during jury arguments in the sentencing proceeding.

**Am Jur 2d, Criminal Law § 940; Homicide § 560.**

**Propriety and prejudicial effect of prosecuting attorney's arguing new matter or points in his closing summation in criminal case. 26 ALR3d 1409.**

21. **Criminal Law § 1366 (NCI4th Rev.)— capital sentencing—prior robbery convictions—separate aggravating circumstances**

The trial court did not err in a capital sentencing hearing by submitting each of defendant's four prior robbery convictions as separate aggravating circumstances under N.C.G.S. § 15A-2000(e)(3). The State presented distinct evidence that defendant had been convicted for committing one common law robbery and three separate armed robberies. Although defendant argues that the prior robbery convictions should have been submitted under one aggravating circumstance, this would not have altered the evidence in aggravation received and considered by the jury, and weighing aggravators and mitigators is not a process of mathematical computation.

**Am Jur 2d, Criminal Law §§ 572, 598, 599; Homicide § 554.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-*Gregg* cases. 65 ALR4th 838.**

**22. Criminal Law § 690 (NCI4th Rev.)— capital sentencing— nonstatutory mitigating circumstances—peremptory instruction different from statutory circumstances**

The trial court did not err in a capital sentencing hearing by refusing to give a peremptory instruction for nonstatutory mitigating circumstances that was similar to that for statutory mitigating circumstances. Although defendant argues that there is no constitutionally valid basis for treating nonstatutory mitigating circumstances differently than statutory ones and states that the jury should be required to give some weight to both, the Constitution does not require a State to ascribe any specific weight to particular circumstances. The rule in North Carolina does not prevent the sentencing jury from considering or from giving effect to any mitigating evidence in recommending a sentence.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 841, 1760.**

**23. Criminal Law § 1402 (NCI4th Rev.)— death sentence— proportionate**

A death penalty for a first-degree murder was proportionate where the record supported the five aggravating circumstances found by the jury; the jury's failure to find certain mitigating circumstances was a rational result from the evidence; and there is no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration. This case is distinguishable from each of those cases in which the North Carolina Supreme Court has found the death penalty disproportionate. Defendant was convicted under the theory of premeditation and deliberation as well as under the felony murder rule; the finding of premeditation and deliberation indicates a more cold-blooded and calculated crime. The jury's finding of the four prior conviction of a violent felony aggravating circumstances is also significant; none of the cases in which the death sentence was disproportionate have included this aggravating circumstance. This case is more similar to cases in which the death penalty was found proportionate than to those in which the sentence was found disproportionate or those in which juries have consistently returned recommendations of life imprisonment.

**Am Jur 2d, Criminal Law § 628; Homicide § 556.**

**STATE v. LARRY**

[345 N.C. 497 (1997)]

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by DeRamus, J., on 28 April 1995 in Superior Court, Forsyth County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals on an additional conviction of robbery with a firearm was allowed 4 April 1996. Heard in the Supreme Court 14 October 1996.

*Michael F. Easley*, Attorney General, by *William B. Crumpler*, Assistant Attorney General, for the State.

*Malcolm Ray Hunter, Jr.*, Appellate Defender, by *Mark D. Montgomery*, Assistant Appellate Defender, for defendant-appellant.

ORR, Justice.

Defendant was found guilty of robbery with a firearm and of the first-degree murder of Robert Buitrago on the basis of malice, premeditation, and deliberation and under the felony murder rule. The evidence at trial tended to show that on 15 January 1994, at approximately 9:30 p.m., defendant robbed a Food Lion grocery store in Winston-Salem. Cynthia Pennell, a Food Lion employee who had access to the safe, saw defendant standing in the front part of the store and asked if she could help him. He said that she could open the safe for him and that if she did not, she was a dead woman. He pointed a small black revolver at her. Pennell went to the safe and opened it. Defendant took at least $1,700 from the safe and put it in a box. He put the box under his arm and went outside. Throughout the robbery, he pointed the gun at others in the store, telling them not to move.

The murder victim, Robert Buitrago, an off-duty police officer, was a customer waiting in line at a register when the robbery occurred. One witness, Chastity Adams, saw defendant point the gun at Buitrago and say, "If you move, you're dead." The cashier for Buitrago's line had her back to defendant but heard him say, "Don't move or I'll kill you." Defendant ran from the store, and Buitrago chased him. When Buitrago caught up with defendant outside the store, near the front doors, a struggle ensued, and defendant fatally shot Buitrago with the handgun. Some witnesses said there was one shot, and some said there were two or more shots. Buitrago died from a single gunshot wound to the chest. Defendant fled on foot.

After witnesses identified defendant as the perpetrator, police obtained arrest warrants and subsequently found defendant hiding in a residence in Winston-Salem. Patrick Huey of the Forsyth County Sheriff's Department testified that he overheard defendant making a statement during a phone conversation from the Forsyth County jail, after his arrest. Huey testified that defendant told the person on the other end that "when they were brought in that they would be kept separate inside the jail and for them not to tell them anything, that he wasn't going to, and that they would not find the weapon; that he was the only one [who] knew where it was."

At the sentencing proceeding, the State presented evidence that defendant previously had been convicted once for common law robbery and three times for armed robbery. The jury found as four separate aggravating circumstances that defendant previously had been convicted of a violent felony. The jury also found as an aggravating circumstance that the murder was committed while defendant was engaged in the commission of a robbery. The jury found the statutory mitigating circumstances that the murder was committed while defendant was mentally or emotionally disturbed and that defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired. The jury also found five nonstatutory mitigating circumstances as well as the catchall mitigating circumstance. However, the jury recommended a sentence of death. The court sentenced defendant to death for the first-degree murder conviction and to a consecutive term of forty years' imprisonment for the armed robbery conviction. Defendant appealed to this Court and brings forth the following assignments of error for our review.

## JURY SELECTION AND PRETRIAL

### I.

[1] Defendant contends that the trial court committed prejudicial error during its preselection instruction to the jury. We disagree. Over defendant's objection, the court instructed prospective jurors that "[i]f the jury finds beyond a reasonable doubt the existence of all facts necessary to impose the death penalty, the law of North Carolina requires that the juror vote to recommend that the defendant be sentenced to death." Defendant argues that this instruction improperly ignored the highly subjective nature of the capital sentencing process. However, we cannot find that defendant could have been prejudiced by the instruction. The judge emphasized to the jury

that the instruction contained general information about the proceedings, and he explained that after the presentation of evidence, the court would give the jury the full instructions that were relevant. A review of the transcript reveals that the court gave full and proper instructions at the sentencing proceeding. This assignment of error is overruled.

## II.

[2] Defendant next contends that the trial court erred in sustaining the State's objection to two questions posed by defendant during jury selection. We disagree.

> "The primary goal of the jury selection process is to ensure selection of a jury comprised only of persons who will render a fair and impartial verdict." *State v. Locklear*, 331 N.C. 239, 247, 415 S.E.2d 726, 731 (1992). Pursuant to N.C.G.S. § 15A-1214(c), counsel may question prospective jurors concerning their fitness or competency to serve as jurors to determine whether there is a basis to challenge for cause or whether to exercise a peremptory challenge. N.C.G.S. § 15A-1214(c) (1988). The trial judge has broad discretion to regulate jury *voir dire. State v. Lee*, 335 N.C. 244, 268, 439 S.E.2d 547, 559, *cert. denied*, ⎯ U.S. ⎯, 130 L. Ed. 2d 162 (1994). "In order for a defendant to show reversible error in the trial court's regulation of jury selection, a defendant must show that the court abused its discretion and that he was prejudiced thereby." *Id.* The right to an adequate *voir dire* to identify unqualified jurors does not give rise to a constitutional violation unless the trial court's exercise of discretion in preventing a defendant from pursuing a relevant line of questioning renders the trial fundamentally unfair. *Morgan v. Illinois*, 504 U.S. 719, 730 n.5, 119 L. Ed. 2d 492, 503 n.5 (1992); *Mu'Min v. Virginia*, 500 U.S. 415, 425-26, 114 L. Ed. 2d 493, 506 (1991).

*State v. Fullwood*, 343 N.C. 725, 732-33, 472 S.E.2d 883, 886-87 (1996). The trial court may refuse to allow the defense to ask questions that are overly broad, incomplete, or hypothetical, or questions that attempt to "stake-out" a potential juror and cause him to pledge himself to a decision in advance of the evidence to be presented. *See, e.g., State v. Davis*, 340 N.C. 1, 23, 455 S.E.2d 627, 638, *cert. denied*, ⎯ U.S. ⎯, 133 L. Ed. 2d 83 (1995); *State v. Jones*, 339 N.C. 114, 134, 451 S.E.2d 826, 835 (1994), *cert. denied*, ⎯ U.S. ⎯, 132 L. Ed. 2d 873 (1995).

Defendant fails to show an abuse of discretion or prejudice. He does not argue that any juror was accepted to whom he had legal objections upon any ground. Defendant was allowed to ask other questions to achieve the same inquiry sought by both of the questions to which the court sustained the State's objection. *See State v. Bishop*, 343 N.C. 518, 534-35, 472 S.E.2d 842, 850 (1996), *cert. denied*, —— U.S. ——, —— L. Ed. 2d ——, 65 U.S.L.W. 3506 (1997). The first question occurred during the defense counsel's *voir dire* of prospective juror Robertson:

Q. . . . . If the defendant chose not to testify in this matter, would you hold it against him?

A. No, I would not.

Q. Would you think he were more likely guilty if he didn't take the witness stand?

MR. SAUNDERS: Objection.

THE COURT: Sustained.

Q. If he didn't take the witness stand, would you not afford him the presumption of innocence?

A. No, I would not.

Q. No, you wouldn't give him the presumption?

A. I mean yes, I would.

Q. You wouldn't hold it against him.

A. Right.

Defendant was clearly allowed to elicit the information sought from prospective juror Robertson. The second question at issue occurred during the defense counsel's *voir dire* of prospective juror Howard:

Q. . . . . If [defendant is] convicted of first degree murder, do you agree that—you agree that all first degree murders do not necessarily deserve the death penalty?

A. Yes.

Q. Would it be fair to say you would not automatically vote for the death penalty if the defendant were convicted of first degree murder?

STATE v. LARRY

[345 N.C. 497 (1997)]

A. That's correct.

Q. You heard the prosecutor outline what they contend that the facts cover; that at the end of first phase of the case, if the defendant is found guilty of going in the Food Lion and robbing and leaving and, while leaving, shooting and killing a man and you found him guilty, would you think that the death penalty was the appropriate punishment?

MR. SAUNDERS: Objection.

THE COURT: Sustained.

Q. Would you automatically vote for the death penalty under that set of facts?

MR. SAUNDERS: Objection.

Q. Would you be willing to listen to other evidence after you found the defendant guilty of punishment [sic]?

A. Yes.

Q. Would you [be] able to consider evidence offered, mitigating evidence offered for the defendant?

A. Yes.

Q. You understand mitigation tends to make life sentence more appropriate?

A. Yes.

Again, defendant was clearly allowed to elicit the information sought from prospective juror Howard. This assignment of error is overruled.

## III.

[3] Defendant next contends that the trial court erred in denying defendant's motion for individual *voir dire* of prospective jurors. Individual *voir dire* of prospective jurors in capital cases is addressed by N.C.G.S. § 15A-1214(j), which provides: "In capital cases the trial judge for good cause shown may direct that jurors be selected one at a time, in which case each juror must first be passed by the State. These jurors may be sequestered before and after selection." The trial court's decision to deny individual *voir dire* of

prospective jurors will not be disturbed absent a showing of an abuse of discretion. *E.g., State v. Short*, 322 N.C. 783, 788, 370 S.E.2d 351, 354 (1988).

Defendant's argument is based on his contention in Issue X that the fact that Buitrago was a police officer was not relevant and was inadmissible. Defendant argues that he was entitled to question prospective jurors who already knew that Buitrago was a police officer without communicating that information to other prospective jurors. We hold in Issue X that the court did not err in allowing the State to present evidence that the victim was a police officer. Therefore, there was no need for individual *voir dire* to prevent prospective jurors from learning that information. This assignment of error is overruled.

## IV.

Defendant also contends that the trial court erred in denying defendant's motion to disqualify the jury venire because the venire heard some of the prospective jurors volunteer that they knew this case involved the killing of a police officer. Because we hold in Issue X that this information was admissible, this assignment of error is without merit.

## V.

[4] Defendant next contends that the trial court erred in denying defendant's motion to exclude uniformed police officers from the courtroom because they would improperly influence the jury. We disagree. In denying the motion, the court stated:

> The motion is denied but without prejudice as to first consideration, Mr. Clary. The Court's not going to prohibit a uniformed officer from coming. But if there is some kind of concerted demonstration or show of force or something like that, otherwise something that would go beyond just an occasional appearance on an individual basis by [a] uniformed officer who may be a witness or who may be a spectator. Without anything more than that, the Court's going to allow that. Not prohibit that. But we'll consider the motion further, if necessary. At this point, the Court's going to deny it.

After reviewing the transcript, we conclude that the court did not abuse its discretion in making this ruling. This assignment of error is overruled.

## GUILT-INNOCENCE PROCEEDING

## VI.

[5] Defendant contends that the trial court erred in denying defendant's motion to dismiss because there was insufficient evidence from which the jury could reasonably conclude that defendant formed an intent to kill after premeditation and deliberation. We disagree.

> When considering a motion to dismiss for insufficiency of the evidence, the trial court must determine whether there is substantial evidence of each element of the offense charged and of the defendant being the perpetrator of the offense. The evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from the evidence. First-degree murder is the unlawful killing of another human being with malice, premeditation, and deliberation. "Premeditation means that the act was thought out beforehand for some length of time, however short; but no particular amount of time is necessary for the mental process of premeditation." *State v. Gladden,* 315 N.C. 398, 430, 340 S.E.2d 673, 693, *cert. denied,* 479 U.S. 871, 93 L. Ed. 2d 166 (1986). Deliberation is an intent to kill carried out in a "cool state of blood" without the influence of a violent passion or a sufficient legal provocation.

*State v. Harden,* 344 N.C. 542, 554, 476 S.E.2d 658, 663 (1996) (citations omitted).

Defendant argues that *State v. Misenheimer,* 304 N.C. 108, 282 S.E.2d 791 (1981), requires that the evidence must support a finding that he deliberated the specific intent to kill before the struggle with the victim began. However, in *State v. Harden,* we refuted this argument. "Deliberation may occur during a scuffle or a quarrel between the defendant and the victim if the emotions produced by the scuffle or quarrel have not overcome the defendant's faculties and reason." *State v. Harden,* 344 N.C. at 555, 476 S.E.2d at 664.

The evidence in this case, viewed in the light most favorable to the State, was sufficient to support a finding that defendant premeditated and deliberated the killing. Defendant's conduct before and after the killing supports a finding that the scuffle with the victim did not overcome defendant's faculties and reason. "Premeditation and deliberation are usually proved by circumstantial evidence because they are mental processes that ordinarily are not readily susceptible to proof by direct evidence. On many occasions, this Court has enu-

merated some of the circumstances which tend to support a proper inference of premeditation and deliberation." *State v. Ginyard,* 334 N.C. 155, 158, 431 S.E.2d 11, 13 (1993) (citation omitted). Several such circumstances are applicable in this case.

First, the fact that defendant carried a loaded gun into the Food Lion and used it to accomplish the robbery supports an inference that he anticipated the need to use deadly force in a possible confrontation. *See State v. Bell,* 338 N.C. 363, 389, 450 S.E.2d 710, 724 (1994), *cert. denied,* —— U.S. ——, 132 L. Ed. 2d 861 (1995); *State v. McPhail,* 329 N.C. 636, 643, 406 S.E.2d 591, 596 (1991); *State v. Fields,* 315 N.C. 191, 200, 337 S.E.2d 518, 524 (1985). Second, Chastity Adams, a Food Lion customer who witnessed the incident, testified that she saw defendant point the gun at the victim and say, "If you move, you're dead," and Lou Blevins, a Food Lion cashier who witnessed the incident, testified that she heard the robber say, "Don't move or I'll kill you." We have held that "threats and declarations made by the defendant against the victim" are "generally considered probative of the existence of premeditation and deliberation." *See, e.g., State v. McCray,* 342 N.C. 123, 129, 463 S.E.2d 176, 180 (1995). This testimony also supports the inference that defendant anticipated the need to use deadly force in a possible confrontation. Third, although a few witnesses testified that they heard only one shot, several witnesses testified that defendant fired two or more shots, with a pause in between. "[S]ome amount of time, however brief, for thought and deliberation must elapse between each pull of the trigger." *State v. Austin,* 320 N.C. 276, 295, 357 S.E.2d 641, 653, *cert. denied,* 484 U.S. 916, 98 L. Ed. 2d 224 (1987). We conclude that the totality of the evidence, when viewed in the light most favorable to the State, was sufficient to support a finding that the murder was premeditated and deliberate. Therefore, the trial court did not err in denying defendant's motion to dismiss the first-degree murder charge.

## VII.

[6] Next, defendant contends that the trial court committed plain error because its instructions did not require the jury to be unanimous on the theory of first-degree murder it used to support its verdict. We disagree.

> The plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, . . . it can be fairly said "the instructional mistake had a

probable impact on the jury's finding that the defendant was guilty."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.) (footnotes omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe*, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212 (1977), *quoted in State v. Odom*, 307 N.C. at 661, 300 S.E.2d at 378. When reviewing an instruction for plain error, we must examine the entire record and determine if the alleged instructional error had a probable impact on the jury's finding of guilt. *State v. Odom*, 307 N.C. at 661, 300 S.E.2d at 378-79.

The court instructed the jury on unanimity as follows:

> I instruct you that a verdict is not a verdict until all 12 jurors agree unanimously as to what your decision shall be. You may not render a verdict by majority vote. You all have a duty to consult with one another and to deliberate with a view to reaching an agreement if it can be done without violence to individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.

> In the course of deliberations, each of you should not hesitate to re-examine your own views and change your opinion if it's erroneous. However, none of you have should [sic] surrender your honest convictions as to the weight or the effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict at this time.

> When you have reached a unanimous verdict, have your foreman mark the appropriate places on the verdict form which will be sent in to you a few moments after you enter the jury room.

When instructing the jury on filling out the verdict sheet, the court said:

> With respect to the possible finding of guilty of first degree murder, there is also a space under there, if that box is checked or X'd and represents the unanimous decision of the jury for the jury to answer whether the finding, unanimous finding of guilt of first degree murder was on the basis of malice, premeditation,

and deliberation or under the first degree felony murder rule or both.

And if it's under one of those two theories, then the foreman would indicate yes that it is. Otherwise, no. And if it's under both, of course, the answer would be yes as to both of them. But that would be the finding of the jury—up to the finding of the jury. And would be filled in only if the jury unanimously finds the defendant guilty of first degree murder and fills in the blank space to the left of that possible verdict.

Also, the verdict sheet clearly indicates that the jury found defendant guilty of both premeditated and deliberate murder and felony murder. In addition, when taking the verdict during the guilt phase, the clerk said to the jury:

In file number 94 CrS 1451, we, the jury, unanimously find the defendant, Thomas Michael Larry, guilty of first degree murder on the basis of malice, premeditation, and deliberation and under the first degree felony murder rule.

Members of the jury, are these your verdicts so say you all?

The members of the jury gave an affirmative indication, and defendant declined an opportunity to poll the jurors individually.

In *State v. Alford*, 339 N.C. 562, 575, 453 S.E.2d 512, 519 (1995), we overruled a similar argument by the defendant that the court's disjunctive instruction, which informed the jury that it could convict under either or both theories of first-degree murder, allowed a conviction on a theory not found by all jurors beyond a reasonable doubt. The record in *State v. Alford* also included a verdict sheet similar to the one in this case, as well as a polling of the jurors. In the case before us, after reviewing the record, we conclude that the jury received proper instructions from the trial court and that there is no risk that the jury was not unanimous as to either theory upon which it based its finding of guilty of first-degree murder. This assignment of error is overruled.

## VIII.

[7] Defendant also contends that the trial court erred in not instructing the jury on the lesser included offenses of second-degree murder and manslaughter. We disagree.

A lesser included offense instruction must be given if the evidence " 'would permit a jury rationally to find [the defendant] guilty

of the lesser offense and acquit him of the greater.'" *State v. Strickland*, 307 N.C. 274, 286, 298 S.E.2d 645, 654 (1983) (quoting *Beck v. Alabama*, 447 U.S. 625, 635, 65 L. Ed. 2d 392, 401 (1980)), *overruled in part on other grounds by State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986).

> The test in every case involving the propriety of an instruction on a lesser grade of an offense is not whether the jury could convict defendant of the lesser crime, but whether the State's evidence is positive as to each element of the crime charged and whether there is any conflicting evidence relating to any of these elements.

*State v. Skipper*, 337 N.C. 1, 26, 446 S.E.2d 252, 265 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 895 (1995). Second-degree murder and manslaughter are lesser included offenses of first-degree murder. *E.g., State v. Thomas*, 325 N.C. 583, 591, 386 S.E.2d 555, 559 (1989). Therefore, the question before us is whether there was positive, uncontradicted evidence of each element of first-degree murder. First-degree murder is the intentional and unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Graves*, 343 N.C. 274, 278, 470 S.E.2d 12, 15 (1996).

Defendant first argues that this standard is unconstitutional because it would violate the principles of fundamental fairness found in both the state and federal Constitutions to require him to negate premeditation and deliberation in order to be entitled to an instruction on second-degree murder. We disagree. The State has the burden of proving the elements of first-degree murder beyond a reasonable doubt. "[I]f the State's evidence is sufficient to satisfy its burden of proving each element of first-degree murder, including premeditation and deliberation, and there is no evidence other than defendant's denial that he committed the crime to negate these elements, the trial court should not instruct the jury on second-degree murder." *State v. Conaway*, 339 N.C. 487, 514, 453 S.E.2d 824, 841, *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 153 (1995).

> [D]ue process requires that a lesser included offense instruction be given when the evidence warrants such an instruction. But due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction. The jury's discretion is thus channelled so that it may convict a defendant of any crime fairly supported by the evidence.

*Hopper v. Evans*, 456 U.S. 605, 611, 72 L. Ed. 2d 367, 373 (1982) (emphasis added).

[8] Second, defendant argues that the evidence supported an instruction on the lesser included offenses. We conclude that because there was positive, uncontradicted evidence of each element of first-degree murder, an instruction on lesser included offenses was not required. Malice may be presumed from the use of a deadly weapon. *Id.* The uncontradicted evidence that defendant used a firearm satisfies the malice requirement. We held in Issue VI that there was positive evidence of an intent to kill formed after premeditation and deliberation. The only evidence of premeditation and deliberation that was contradicted was the number of shots fired. However, even without considering the number of shots fired, the uncontradicted evidence that defendant carried a loaded gun to commit a robbery and threatened the victim that he would kill him if he moved is sufficient positive evidence of premeditation and deliberation. Because the State presented evidence of each element of first-degree murder that was positive and uncontroverted, the trial court did not err in declining to submit the lesser included offenses. This assignment of error is overruled.

## IX.

[9] Defendant next contends that the trial court erred in not instructing the jury on imperfect self-defense. We disagree.

The elements which constitute perfect self-defense are:

(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Lyons*, 340 N.C. 646, 661, 459 S.E.2d 770, 778 (1995).

Perfect self-defense excuses a defendant altogether for a killing if all four elements above exist at the time of the killing. Imperfect self-defense renders a defendant guilty of at least voluntary manslaughter if the first two elements above exist at the time of the killing but the defendant, *without murderous intent,* either was the aggressor in bringing on the affray or used excessive force.

*Id.* (emphasis added). We held in Issue VIII that there was positive, uncontradicted evidence that defendant formed an intent to kill with malice and after premeditation and deliberation. Therefore, defendant did not act "without murderous intent" and was not entitled to an instruction on imperfect self-defense. *See State v. Baldwin,* 330 N.C. 446, 465, 412 S.E.2d 31, 42 (1992) (defendant was not entitled to an instruction on imperfect self-defense where the uncontradicted evidence shows that the events leading to the shooting were initiated by defendant with murderous intent). This assignment of error is overruled.

## X.

[10] Defendant contends that the trial court erred in allowing the State to present evidence that the decedent was a police officer because the evidence was not relevant and was unfairly prejudicial to defendant. We disagree.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1992). As a general rule, "[a]ll relevant evidence is admissible . . . . Evidence which is not relevant is not admissible." N.C.G.S. § 8C-1, Rule 402 (1992). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." N.C.G.S. § 8C-1, Rule 403 (1992).

"We have interpreted Rule 401 broadly and have explained on a number of occasions that in a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible." *State v. Collins,* 335 N.C. 729, 735, 440 S.E.2d 559, 562 (1994). "Whether or not to exclude evidence under Rule 403 of the Rules of Evidence is a matter within the sound discretion of the trial court and its decision will not be disturbed on appeal absent a showing of an abuse of discretion." *State v. McCray,* 342 N.C. at 131, 463 S.E.2d at 181.

After reviewing the transcript, we conclude that the challenged evidence was relevant and that the trial court did not abuse its discretion in deciding that the danger of unfair prejudice did not outweigh the probative value. Sergeant S.H. Mayberry of the Winston-Salem Police Department arrived on the crime scene shortly after the shooting. She testified, over defendant's objection, that she recognized the victim to be "Officer Robert Buitrago with the Winston-Salem Police Department." She also testified, over defendant's objection, that she removed the victim's badge before he was transported to the hospital. Defendant also complains that other law enforcement officers who testified referred to the victim as "Officer Buitrago." Sergeant Mayberry's actions upon arriving at the scene of the crime and the identity of the victim as a police officer are clearly circumstances which throw light upon the crime. The victim's status as a police officer led him to pursue defendant, which led to defendant shooting him. The witnesses' references to the victim as "Officer Buitrago" simply incorporated the title "officer." This assignment of error is overruled.

## SENTENCING PROCEEDING

### XI.

**[11]** Defendant contends that the trial court erred in submitting the aggravating circumstance that the killing was committed during the course of an armed robbery. *See* N.C.G.S. § 15A-2000(e)(5) (1988) (amended 1994). Defendant argues that because his conviction for first-degree murder based on premeditation and deliberation was infirm for the reasons argued in Issues VI-IX, the only proper theory of conviction of first-degree murder was based on the felony murder rule. Therefore, defendant argues, the trial court erred in submitting the underlying felony as an aggravating circumstance under *State v. Cherry*, 298 N.C. 86, 257 S.E.2d 551 (1979) (the (e)(5) aggravating circumstance may not be submitted to the jury if the jury found the defendant guilty only of felony murder based on the same felony), *cert. denied*, 446 U.S. 941, 64 L. Ed. 2d 796 (1980). However, as we held in Issues VI-IX, the trial court did not err in relation to the conviction of first-degree murder based on premeditation and deliberation. Therefore, the trial court properly submitted the (e)(5) aggravating circumstance. This assignment of error is overruled.

### XII.

**[12]** Defendant next contends that the trial court committed plain error in failing to submit to the jury the statutory mitigating circum-

stance that "[t]he victim was a voluntary participant in the defendant's homicidal conduct or consented to the homicidal act." *See* N.C.G.S. § 15A-2000(f)(3). "[T]he trial court must submit any statutory mitigating circumstance supported by the evidence. N.C.G.S. § 15A-2000(b)." *State v. DeCastro*, 342 N.C. 667, 688-89, 467 S.E.2d 653, 664, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 170 (1996). Defendant argues that the (f)(3) mitigating circumstance applies because in attempting to detain defendant, the victim voluntarily injected himself into the situation that resulted in his death. We disagree.

Our research reveals no North Carolina case interpreting the (f)(3) mitigating circumstance. However, the Supreme Court of Florida has interpreted a similar mitigating circumstance: "The victim was a participant in the defendant's conduct or consented to the act." *See Wuornos v. State*, 676 So. 2d 972, 975 (Fla.), *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 384 (1996). In *Wuornos*, the defendant argued that the mitigating circumstance applied because the victim contributed to the acts leading to his death by seeking the services of a prostitute and thereby assuming the risk of suffering bodily harm. The court stated:

> It would be absurd to construe this language as applying whenever victims have engaged in some unlawful or even dangerous transaction that merely provided the killer a better opportunity to commit murder, which the victim did not intend. What the language plainly means is that the victim has knowingly and voluntarily participated with the killer in some transaction that in and of itself would be likely to result in the victim's death, viewed from the perspective of a reasonable person. An example would be two persons participating in a duel, with one being killed as a result.

*Id.* Also, in *Dill v. State*, 600 So. 2d 343 (Ala. Crim. App. 1991), *aff'd*, 600 So. 2d 372 (Ala. 1992), *cert. denied*, 507 U.S. 924, 122 L. Ed. 2d 684 (1993), the appellant argued that the trial court erred in failing to find a comparable mitigating circumstance, that "[t]he victim was a participant in the defendant's conduct or consented to it." The Alabama Court of Criminal Appeals stated, "The appellant's argument that Leon Shaw's refusal to give him cocaine made Shaw a participant in the appellant's conduct has no merit and is not a reasonable interpretation of the statute. [Alabama Code] Section 13A-5-51(3) contemplates a situation wherein the victim participated in the capital crime with the defendant." *Id.* at 364.

Defendant argues that the Model Penal Code interpretation of a substantially similar mitigating circumstance should be applied. The Model Penal Code mitigating circumstance states, "The victim was a participant in the defendant's homicidal conduct or consented to the homicidal act." Model Penal Code § 210.6(4)(c) (1962). However, the Model Penal Code interpretation is no more sympathetic to defendant's argument. The Model Penal Code commentary states that the Model Penal Code mitigating circumstance that is substantially similar to N.C.G.S. § 15A-2000(f)(3)

> addresses the case where the victim is partially responsible for his own death. This circumstance obtains chiefly in two kinds of situations. First, there are occasions in which the defendant and his victim are engaged jointly in an activity highly dangerous to each. If each person's participation depends upon the cooperation of the other, a murder conviction may lie for the death of one actor, even though both share responsibility. An example may be the case of Russian Roulette, at least where the defendant actually fires the shot that kills his partner. A second situation within the scope of [the mitigating circumstance] is the true mercy killing. There the defendant's homicidal act may not have occurred had the victim not consented to it. In either of these contexts, the conduct of the victim in bringing about his own death deserves consideration as a mitigating factor in assigning a death sentence.

Model Penal Code § 210.6 cmt. 6, at 140-41 (footnote omitted).

In *Huffington v. State*, 304 Md. 559, 500 A.2d 272 (1985), *cert. denied*, 478 U.S. 1023, 92 L. Ed. 2d 745 (1986), the Maryland Court of Appeals applied this Model Penal Code commentary when defendant argued that the mitigating circumstance should have been submitted where the victim and the defendant were joint participants and co-conspirators in an alleged drug sale. Holding that the evidence did not support the mitigating circumstance, the court stated: "The conduct which caused [the victim's] death related to [defendant's] carrying and concealing a loaded pistol and the firing of such pistol at [the victim's] back. It is beyond the stretch of anyone's imagination to say that [the victim] participated in this conduct." *Id.* at 583, 500 A.2d at 284.

Similarly, in the case at bar, we find absolutely no merit in defendant's argument that the victim participated in the conduct that caused the victim's death. Obviously, the victim had nothing to do with the

armed robbery; he merely attempted to apprehend defendant when defendant fled. Therefore, the evidence did not support submission of the (f)(3) statutory mitigating circumstance. Furthermore, defendant was not prevented from presenting, nor the jury from considering, evidence that the victim was killed as a result of the struggle between defendant and the victim. The court submitted the following nonstatutory mitigating circumstance: "Consider whether the shot was fired as a result of the struggle between the defendant and the victim and whether you deem this to have mitigating value." This assignment of error is overruled.

## XIII.

[13] Defendant contends that he was prejudiced during the sentencing phase because the prosecutor unfairly cross-examined him. We disagree.

In *State v. Bronson*, 333 N.C. 67, 79, 423 S.E.2d 772, 779 (1992), we said:

> The bounds of cross-examination are limited by two general principles: 1) the scope of the cross-examination rests within the sound discretion of the trial judge; and 2) the questions must be asked in good faith. A prosecutor's questions are presumed to be proper unless the record shows that they were asked in bad faith. Abuse of discretion is generally found when a prosecutor affirmatively places before the jury an incompetent and prejudicial matter by injecting his own knowledge, beliefs, or personal opinions or facts which are either not in evidence or not admissible.

(Citations omitted.)

Defendant advances several general complaints about the cross-examination, including the prosecutor's questions about defendant's reliance on counsel, a plea to a prior crime, and a suggestion that defendant testified because his counsel told him that was the only way he could save his life. Defendant argues that the total effect of the cross-examination violated his constitutional rights to the assistance of counsel and to enter a plea of guilt as to the prior crime while maintaining his actual innocence. However, defendant did not request a jury instruction on these rights. Defendant concedes that the prosecutor was allowed to impeach him by evidence of prior crimes. Furthermore, the court sustained the defendant's objections to improper questions or comments by the prosecutor. "[T]he sustaining of the objection advised the jurors that they should not con-

sider the question." *State v. Carter*, 342 N.C. 312, 324, 464 S.E.2d 272, 280 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 957 (1996). After a careful review of the transcript, we conclude that defendant was not prejudiced by the prosecutor's cross-examination of him during the sentencing proceeding. This assignment of error is overruled.

## XIV.

**[14]** Defendant next contends that the trial court erred by overruling his objections to two comments by the prosecutor during closing argument in the sentencing proceeding. Defendant maintains that the comments impermissibly criticized his exercise of the constitutional rights not to testify and to plead not guilty. We hold that any references to defendant's failure to testify or to his election to plead not guilty were harmless beyond a reasonable doubt.

"A criminal defendant may not be compelled to testify, and any reference by the State regarding his failure to testify is violative of his constitutional right to remain silent." *State v. Baymon*, 336 N.C. 748, 758, 446 S.E.2d 1, 6 (1994) (citing *Griffin v. California*, 380 U.S. 609, 14 L. Ed. 2d 106 (1965)); *see* U.S. Const. amend. V; N.C. Const. art. I, § 23. "[T]he error may be cured by a withdrawal of the remark or by a statement from the court that it was improper, followed by an instruction to the jury not to consider the failure of the accused to offer himself as a witness." *State v. McCall*, 286 N.C. 472, 487, 212 S.E.2d 132, 141 (1975). The trial court's failure to give a curative instruction after the State's comment on an accused's failure to testify does not call for an automatic reversal, but requires this Court to determine if the error is harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1988); *State v. Baymon*, 336 N.C. at 758, 446 S.E.2d at 6; *State v. Reid*, 334 N.C. 551, 557, 434 S.E.2d 193, 198 (1993).

Similarly, a criminal defendant has a constitutional right to plead not guilty and be tried by a jury. U.S. Const. amend. VI; N.C. Const. art. I, § 24; *State v. Langford*, 319 N.C. 340, 345, 354 S.E.2d 523, 526 (1987). Reference by the State to a defendant's failure to plead guilty violates his constitutional right to a jury trial. *State v. Thompson*, 118 N.C. App. 33, 41, 454 S.E.2d 271, 276, *disc. rev. denied*, 340 N.C. 262, 456 S.E.2d 837 (1995). The court's failure to give a curative instruction after such a reference does not warrant a reversal, however, if the State shows that the error was harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b); *State v. Thompson*, 118 N.C. App. at 41, 454 S.E.2d at 276.

**STATE v. LARRY**

[345 N.C. 497 (1997)]

Defendant complains that the prosecutor referred to his failure to testify when he argued:

Now, there's one other time that you can hear about [defendant's] past, too. And that's if he takes the stand. He can be cross-examined about all those other prior convictions. But in this case, the defendant elected not to testify during the guilt or innocence phase. And he has a constitutional right to do that.

But ask yourself this question: Why did he do that?

[Objection overruled.]

[PROSECUTOR]: Anyway, he testified yesterday that he wanted you to know the whole truth. You decide whether or not that was his motivation or not. I submit to you that wasn't his motivation. Whether or not you knew the truth was the fartherest [sic] thing from his mind. He had nothing to lose yesterday. You folks had already found him guilty. He had nothing to lose except get up there and try and convince you that he was remorseful about this crime.

Defendant complains that the prosecutor referred to his failure to plead guilty when he made the following argument as to why the jury should reject the nonstatutory mitigating circumstance that "the defendant has acknowledged wrongdoing in connection with these offenses of robbery with a firearm and first degree murder."

What wrongdoing did he admit with respect to shooting Robert Buitrago? What did he tell his psychologist? The gun just went off. He didn't admit to any kind of murder in this case. He admitted to murder, he'd pled guilty, I assume.

[Objection overruled.]

Assuming *arguendo* that the prosecutor's argument contained improper references to defendant's failure to testify and to his election to plead not guilty, the references were harmless beyond a reasonable doubt. The prosecutor's single reference to defendant's failure to testify at the guilt-innocence proceeding could not have contributed to the imposition of the death penalty. The reference was made during the sentencing proceeding, in which defendant testified. When the reference was made, the jury had already found defendant guilty of first-degree murder. There is no danger that the reference caused the jury to presume defendant's guilt or to regard his silence as indicative of guilt.

The prosecutor's single reference to defendant's failure to plead guilty was made during an argument that the jury should not find the existence of the nonstatutory mitigating circumstance that defendant had acknowledged wrongdoing in connection with the offenses of robbery with a firearm and first-degree murder. The prosecutor offered other reasons why the jury should not find this mitigating circumstance. However, there may be a possibility that the prosecutor's reference could have persuaded one or more jurors not to find the existence of this mitigating circumstance.

In *State v. McLaughlin*, 341 N.C. 426, 451, 462 S.E.2d 1, 14 (1995), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 879 (1996), this Court stated:

> [O]verwhelming evidence supported the jury's findings of the aggravating circumstances that defendant had been convicted of a prior violent felony and that the murder here was committed for pecuniary gain. When we consider the two aggravating circumstances found by the jury in light of the eight mitigating circumstances found by the jury, we are compelled to conclude that the trial court's failure to give a peremptory instruction, which may have caused one or more jurors to fail to find as a mitigating circumstance that defendant worked as a cook in the prison, was harmless error beyond a reasonable doubt.

In *State v. Taylor*, 304 N.C. 249, 288, 283 S.E.2d 761, 785 (1981), *cert. denied*, 463 U.S. 1213, 77 L. Ed. 2d 1398 (1983), this Court held that the improper submission of the underlying felony as an aggravating circumstance was harmless error because overwhelming evidence supporting other statutory aggravating circumstances convinced us that the weighing process had not been compromised.

Similarly, in the case at bar, overwhelming evidence supports the five aggravating circumstances found by the jury. When we consider these aggravating circumstances in light of the mitigating circumstances found by the jury, as well as the mitigating circumstance not found by the jury that defendant had acknowledged wrongdoing, we are convinced that the weighing process was not compromised. This assignment of error is overruled.

## XV.

[15] Defendant also contends that the prosecutor made several grossly improper arguments to the jury at the sentencing proceeding. We disagree.

Counsel is allowed wide latitude in the jury argument in both the guilt and sentencing phases. However, the objectives of the arguments in the two phases are different, and rhetoric that may be prejudicially improper in the guilt phase is acceptable in the sentencing phase. Further, the prosecutor's closing remarks must be taken in the context of his role as a zealous advocate for criminal convictions.

*State v. Kandies*, 342 N.C. 419, 452, 467 S.E.2d 67, 85, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 167 (1996).

First, defendant complains that in three sections of his argument, the prosecutor improperly urged the jury to consider the possibility of parole in its sentencing deliberations. The first such argument was a statement concerning future victims. The court sustained defendant's objections to this statement. As we noted above, the sustaining of the objection advised the jurors that they should not consider the statement. *See State v. Carter*, 342 N.C. at 324, 464 S.E.2d at 280. After reviewing the transcript, we conclude that in light of the court's sustaining of the objection, any error was harmless beyond a reasonable doubt. *See* N.C.G.S. § 15A-1443(b).

Defendant failed to object to the second and third sections of argument to which he now assigns error. "Therefore, the 'impropriety of the argument must be gross indeed in order for this Court to hold that [the trial court] abused [its] discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it.' " *State v. Ball*, 344 N.C. 290, 309, 474 S.E.2d 345, 356 (1996) (quoting *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979)). The second section of argument challenged by defendant follows:

You know, but we put him in jail for 25 years back in 1975, that didn't stop him. He got out after 11. Within six months, he committed another crime. Went back to jail for ten years, they kept him for three. That didn't stop him.

The only thing that's going to stop him, members of the jury, I submit to you, is your sentence of death. That's the only thing that's going to stop him. You might think that maybe we're asking for too much because maybe if the Department of Correction would have kept him all those times, he wouldn't have committed this murder.

STATE v. LARRY

[345 N.C. 497 (1997)]

But you see, members of the jury, we can't account for what everybody else does. We can only account for our own conduct. He's here today because of his conduct. You're here today because you're decent citizens. I'm here today because it's my job. We can only account for our own conduct. And you have a duty. And you might be upset about what the Department of Corrections has done, letting him go time and time again, but it still comes back to what your duty is. And I'm asking you to do that duty.

The third section of argument challenged by defendant contained similar language:

These defense lawyers are going to get up here and argue to you about, oh, the robberies he's been sentenced for, he's 54 years on that. Going to be sentenced on this robbery here, no telling, up to forty years. And if you don't give him death, he's going to get life. They are going to try and convince you that that's enough punishment in this case. That that will keep him locked away.

Members of the jury, the only way you can be sure of it is to vote for the death penalty in this case. And I submit to you, members of the jury, that you can do that by following the law and the facts.

After a careful review of the transcript, we conclude that these arguments did not constitute impermissible injection of the possibility of parole into the jury's sentencing deliberations. Instead, the arguments focused on the importance of the jury's duty and suggested that the death penalty would specifically deter defendant from committing future crimes, both permissible lines of argument by the prosecutor. *See State v. Jones*, 336 N.C. 229, 256, 443 S.E.2d 48, 61 (argument emphasizing the responsibility and duty of each juror and of the jury as a whole was not improper), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 423 (1994); *State v. Syriani*, 333 N.C. 350, 397, 428 S.E.2d 118, 144 (specific deterrence arguments are proper), *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993).

[16] Second, defendant argues that the prosecutor misrepresented the nature of mitigation by characterizing mitigation as "credit" for defendant or an "excuse" for his crime and by stating, in reference to a mitigating circumstance, that "because of that one incident in his life, you know, he's entitled to, you know, a life sentence regardless of the other 20 years of his life." After reviewing the transcript, we

conclude that these arguments were not improper. "[P]rosecutors may legitimately attempt to deprecate or belittle the significance of mitigating circumstances." *State v. Basden,* 339 N.C. 288, 305, 451 S.E.2d 238, 247 (1994), *cert. denied,* —— U.S. ——, 132 L. Ed. 2d 845 (1995). Furthermore, the trial court correctly instructed the jury on mitigation.

**[17] [18]** Third, defendant claims that the following argument by the prosecutor was improper:

> Robert Buitrago died a hero. He died for you. He gave his life for you.
>
> [Objection overruled.]
>
> [PROSECUTOR]:  He gave his life so there would be no more victims, no more kids would have guns stuck in their face. . . .
>
> . . . .
>
> Robert Buitrago, folks, he was a martyr to the cause of good. A martyr. Don't you think it's fair that this man who has done nothing right his whole life, nothing but wrong his whole life, nothing but hurt people, don't you think it's right he should die a martyr to the cause of evil?

Defendant claims that comments about his own character, along with this argument, improperly reduced the jury's decision to who was the better person, the victim or the defendant. However, "[t]he character of a defendant is an appropriate consideration during sentencing." *State v. Campbell,* 340 N.C. 612, 638, 460 S.E.2d 144, 158 (1995), *cert. denied,* —— U.S. ——, 133 L. Ed. 2d 871 (1996). Where a defendant in a capital sentencing proceeding has placed his character at issue, the State may rebut this evidence. *State v. Silhan,* 302 N.C. 223, 273, 275 S.E.2d 450, 484 (1981). Several of defendant's nonstatutory mitigating circumstances placed his character at issue. Therefore, the prosecutor's arguments about defendant's character, which were within the latitude allowed to counsel in arguments, were not improper.

Defendant also claims that this argument by the prosecutor was improperly designed to appeal to the jury's sympathy for the victim. However,

> [i]n *Payne v. Tennessee,* 501 U.S. 808, 825, 115 L. Ed. 2d 720, 735-36 (1991), the United States Supreme Court upheld the use of victim-impact statements during closing arguments unless the

victim-impact evidence is so unduly prejudicial that it renders the trial fundamentally unfair.

*State v. Bishop*, 343 N.C. at 554, 472 S.E.2d at 861. In *State v. Bishop*, we held that the prosecutor's arguments about the victim and what she could have accomplished served to inform the jury about the specific harm caused by the crime and did not render the trial fundamentally unfair. Similarly, in the case at bar, the prosecutor's argument did not render the trial fundamentally unfair.

[19] Fourth, defendant claims that the prosecutor improperly asked the jury to rely on the judgment of the prosecutor, rather than take full responsibility on itself for the sentencing recommendation, in violation of *Caldwell v. Mississippi*, 472 U.S. 320, 86 L. Ed. 2d 231 (1985), when he argued that defendant qualified for the death penalty because he was "the worst of the worst." After reviewing the transcript, we conclude that the prosecutor's statement did not suggest to the jurors that they should rely on the judgment of the prosecutor, rather than taking full responsibility on itself for the sentencing recommendation. Defendant also claims that the prosecutor made similar improper arguments in two other places in the transcript, to which he cites the transcript page numbers. However, we find no argument on either page cited that could be interpreted as being improper.

[20] Fifth, defendant cites five statements by the prosecutor which he claims were arguments based on aggravating circumstances not submitted to the jury and were outside the evidence. We have considered several of the statements earlier in this opinion. After a careful review of the transcript, we conclude that all of the statements challenged by defendant were based on reasonable inferences from the evidence presented and were within the wide latitude allowed to counsel during jury arguments in the sentencing proceeding. This assignment of error is overruled.

## XVI.

Defendant contends that the collective effect of the improprieties in the cross-examination and the closing argument by the prosecution rendered his sentencing proceeding fundamentally unfair. We disagree. A review of the entire transcript of the sentencing proceeding reveals that defendant received a fair sentencing proceeding, free from any prejudice resulting from the cross-examination and closing argument of the prosecution.

STATE v. LARRY

[345 N.C. 497 (1997)]

## XVII.

**[21]** Defendant next contends that the trial court erred in submitting each of defendant's four prior robbery convictions as separate aggravating circumstances under N.C.G.S. § 15A-2000(e)(3), which provides, "The defendant had been previously convicted of a felony involving the use or threat of violence to the person." We disagree.

We have held that N.C.G.S. § 15A-2000(e) permits the submission of separate aggravating circumstances pursuant to the same statutory subsection if the evidence supporting each is distinct and separate. *State v. Bond*, 345 N.C. 1, 478 S.E.2d 163 (1996) (court properly submitted three times the N.C.G.S. § 15A-2000(e)(5) aggravating circumstance that the murder was committed during the course of a felony based on three separate and distinct felonies committed by the defendant during the course of the murder); *State v. Moseley*, 338 N.C. 1, 449 S.E.2d 412 (1994) (court properly submitted two aggravating circumstances based on the same course of conduct where the defendant was convicted of two separate offenses against the same victim), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 738 (1995). In the present case, the State presented distinct evidence that defendant had been convicted for committing one common law robbery and three separate armed robberies.

Defendant argues that the prior robbery convictions should have been submitted under one aggravating circumstance. However, this would not have altered the evidence in aggravation received and considered by the jury, and weighing aggravators and mitigators is not a process of mathematical computation. *See State v. Artis*, 325 N.C. 278, 340, 384 S.E.2d 470, 505-06 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). The trial court gave the following instruction to the jury:

> You should not merely add up the number of aggravating circumstances and mitigating circumstances. Rather, you must decide from all the evidence what value to give to each circumstance and then weigh the aggravating circumstances so valued against the mitigating circumstances so valued, and finally determine whether the mitigating circumstances are insufficient to outweigh the aggravating circumstances.

We hold that the court did not err in submitting each of defendant's four prior robbery convictions as separate aggravating circumstances under N.C.G.S. § 15A-2000(e)(3).

## XVIII.

[22] Defendant contends that the trial court erred by refusing to give a peremptory instruction for nonstatutory mitigating circumstances that was similar to that for statutory mitigating circumstances, thereby requiring the nonstatutory mitigating circumstances to be mitigating as a matter of law like the statutory mitigating circumstances. Defendant argues that there is no constitutionally valid basis for treating nonstatutory mitigating circumstances differently than statutory ones and states that the jury should be required to give some weight to both. We disagree.

The United States Supreme Court's cases and our cases require that the sentencing jury be permitted to consider and give effect to mitigating evidence in recommending a sentence. *See McKoy v. North Carolina*, 494 U.S. 433, 442-43, 108 L. Ed. 2d 369, 381 (1990); *Penry v. Lynaugh*, 492 U.S. 302, 318-19, 106 L. Ed. 2d 256, 277-78 (1989); *State v. Rouse*, 339 N.C. 59, 108, 451 S.E.2d 543, 570 (1994), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 60 (1995). However, "the Constitution does not require a state to adopt specific standards for instructing the jury in its consideration of aggravating and mitigating circumstances," *Zant v. Stephens*, 462 U.S. 862, 890, 77 L. Ed. 2d 235, 258 (1983), and "the Constitution does not require a State to ascribe any specific weight to particular factors, either in aggravation or mitigation, to be considered by the sentencer," *Harris v. Alabama*, —— U.S. ——, ——, 130 L. Ed. 2d 1004, 1014 (1995). These are tasks that "properly rest within the State's discretion to administer its criminal justice system." *Id.* In North Carolina, "[w]hether the jury finds a non-statutory mitigating circumstance depends not only upon whether that circumstance is supported by the evidence, but also upon whether the jury determines that circumstance to have mitigating value." *State v. Rouse*, 339 N.C. at 106, 451 S.E.2d at 570. This rule does not prevent the sentencing jury from considering or from giving effect to any mitigating evidence in recommending a sentence. This assignment of error is overruled.

## XIX.

Defendant concedes that his remaining assignments of error, enumerated as Issues XIX through XXII and set out on pages 89 through 101 in his brief, concern issues that this Court has previously decided contrary to his position. Specifically, defendant contends that the trial court erred (a) in denying defendant's motion to allow the jury to

recommend life without parole, *see State v. Roseboro,* 344 N.C. 364, 474 S.E.2d 314 (1996); *State v. Fullwood,* 343 N.C. 725, 472 S.E.2d 883; (b) in its instruction to the jury on the nature of the life sentence and the possibility of parole, *see State v. Lee,* 335 N.C. 244, 439 S.E.2d 547; (c) in denying defendant's motion to examine prospective jurors on their perceptions of parole eligibility, *see State v. Roseboro,* 344 N.C. 364, 474 S.E.2d 314; *State v. Payne,* 337 N.C. 505, 448 S.E.2d 93 (1994), *cert. denied,* —— U.S. ——, 131 L. Ed. 2d 292 (1995); and (d) in instructing the jury that it must be unanimous in order to answer Issue Three "no," *see State v. McCarver,* 341 N.C. 364, 462 S.E.2d 25 (1995), *cert. denied,* —— U.S. ——, 134 L. Ed. 2d 482 (1996). Defendant raises these issues to provide this Court an opportunity to reexamine its prior holdings. We have carefully considered defendant's arguments on these issues. We find no compelling reason to depart from our prior holdings, and we are not persuaded that prejudicial error occurred so as to warrant a new trial or sentencing proceeding.

## PROPORTIONALITY REVIEW

## XX.

[23] We now turn to the duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this Court in capital cases. We have examined the record, transcripts, and briefs in the present case and conclude that the record fully supports the five aggravating circumstances found by the jury: that the defendant had been previously convicted of a felony involving the use of violence to the person, N.C.G.S. § 15A-2000(e)(3), submitted and found four times for four separate prior robbery convictions; and that the murder was committed by the defendant while the defendant was engaged in the commission of robbery, N.C.G.S. § 15A-2000(e)(5). We also find that the jury's failure to find certain submitted mitigating circumstances was a rational result from the evidence. Further, we find no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We must now turn to our final statutory duty of proportionality review.

Proportionality review is designed to "eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden,* 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied,* 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). In conducting proportionality review, we determine whether "the sentence of death in the present case is excessive or disproportionate to the

penalty imposed in similar cases considering both the crime and the defendant." *State v. Williams*, 308 N.C. 47, 79, 301 S.E.2d 335, 355, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983); *accord* N.C.G.S. § 15A-2000(d)(2). We do not conclude that the imposition of the death penalty in this case is aberrant or capricious.

In our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 433 S.E.2d 144 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895 (1994). It is also proper for this Court to compare this case with the cases in which we have found the death penalty to be proportionate. *Id.* Although we review all of the cases when engaging in this statutory duty, we will not undertake to discuss or cite all of those cases each time we carry out that duty. *Id.*

This case is distinguishable from each of those cases in which this Court has found the death penalty disproportionate. In three of those cases, *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983), the defendant either pled guilty or was convicted by the jury solely under the theory of felony murder. Here, defendant was convicted on the theory of premeditation and deliberation as well as under the felony murder rule. We have said that "[t]he finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis*, 325 N.C. at 341, 384 S.E.2d at 506.

The jury's finding of the four "prior conviction of a violent felony" aggravating circumstances is also significant. *See id.* at 342, 384 S.E.2d at 507. "[N]one of the cases in which the death sentence was determined by this Court to be disproportionate have included this aggravating circumstance." *State v. Harris*, 338 N.C. 129, 161, 449 S.E.2d 371, 387 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 752 (1995).

We conclude that the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence disproportionate or those in which juries have consistently returned recommendations of life imprisonment. Therefore, the sentence of death recommended by the jury and ordered by the trial court in the present case is not disproportionate.

For the foregoing reasons, we conclude that defendant received a fair trial, free from prejudicial error, and that the sentence of death entered in the present case must be and is left undisturbed.

NO ERROR.